Filed 7/31/17

# IN THE SUPREME COURT OF CALIFORNIA

MOUNTAIN AIR ENTERPRISES, LLC,   )
                                            )

        Plaintiff and Respondent,   )

                                            )                     S223536

        v.                                        )

                                            )           Ct.App. 1/2 A138306

SUNDOWNER TOWERS, LLC, et al.,   )

                                            )            Marin County

        Defendants and Appellants.   )     Super. Ct. No. CIV081957

_____)

In this complex real estate purchase transaction, the seller brought a breach of contract action against the buyers for failing to purchase the subject property. The defendant buyers asserted an affirmative defense of novation, arguing that they were not liable under the purchase agreement because it had been superseded by the parties' option agreement; that option agreement granted them the exclusive right, but not the obligation, to purchase the property. The trial court agreed.

The question we must answer is whether the defendants' assertion of the option agreement as an affirmative defense triggers the attorney fees provision in that agreement. For reasons that follow, we conclude that it does not. However, as we also explain, defendants are nonetheless entitled to attorney fees under that provision.

SEE DISSENTING OPINION

## FACTUAL AND PROCEDURAL BACKGROUND

Like the Court of Appeal, we draw most of the underlying facts from the trial court's over-40-page final statement of decision. (See *Chapala Management Corp. v. Stanton* (2010) 186 Cal.App.4th 1532, 1535.)

The principals to this dispute are Steven Scarpa of Mountain Air Enterprises (Mountain Air) and Bijan Madjlessi of Sundowner Towers (Sundowner), both of whom are described as experienced real estate investors and developers. In early 2004, Madjlessi explored possible real estate investments outside of California. Madjlessi discovered the subject single parcel of real property located at 450 Arlington Avenue, in Reno, Nevada (Property). The improvements consisted of the "North Tower," the "Casino Building," and the "South Tower." As relevant here, the Property remained a single parcel until February 17, 2006, when it was separated into three parcels, the North Tower, the South Tower, and the Casino Building.

On or about December 12, 2005, when the Property was still a single parcel, Scarpa and Sundowner entered into two separate agreements: (1) an agreement wherein Sundowner agreed to sell the South Tower to Scarpa for $7 million (the purchase agreement); and (2) an agreement whereby Sundowner agreed to later repurchase the South Tower from Scarpa for $7 million plus an "inflation factor" of 12 percent (the repurchase agreement). Madjlessi and Glenn Larsen, a business associate of Madjlessi's and a member of Sundowner, guaranteed Sundowner's obligations under the repurchase agreement. Scarpa subsequently assigned his rights under both agreements to Mountain Air.

On or about April 25, 2006 — just days before Sundowner transferred the South Tower to Mountain Air — Mountain Air as seller, and Larsen and Madjlessi individually, as buyers, executed a written option agreement whereby Mountain Air granted Larsen and Madjlessi the exclusive right to purchase (or rather

2

repurchase) the South Tower during the option period (the option agreement). Larsen and Madjlessi personally guaranteed their obligations under the option agreement. On April 27, 2006, Sundowner, after acquiring the South Tower from a third party, concurrently transferred it to Mountain Air pursuant to the purchase agreement. However, Sundowner never repurchased the South Tower as agreed to in the repurchase agreement, and Mountain Air filed suit.

In its operative second amended complaint, Mountain Air alleged three causes of action: (1) specific performance of the repurchase agreement; (2) breach of the guaranty of the repurchase agreement; and (3) breach of the repurchase agreement. The first and third causes of action were asserted against all three defendants. The second cause of action was alleged against Madjlessi and Larsen, as the guarantors. In response, defendants raised numerous affirmative defenses, two of which are relevant here: (1) the second affirmative defense stated that the option agreement, which included an integration clause stating that the agreement "expressly supersedes all previous or contemporaneous agreements, understandings, representations, or statements between the parties respecting this matter," was a novation that extinguished the repurchase agreement; (2) the fourth affirmative defense stated that the repurchase agreement was illegal, and therefore void and unenforceable.

After a 13-day bench trial, the trial court ruled in defendants' favor. It found the repurchase agreement "void, illegal and unenforceable" because the agreement did not require either party to prepare or record a parcel map in accordance with the subdivision map laws of Nevada and California. The trial court also concluded the option agreement was a novation and extinguished the repurchase agreement and any obligation defendants had under it. It entered judgment in favor of defendants.

As the prevailing parties, defendants filed a motion for an award of attorney fees in the amount of $774,141 under both the repurchase agreement and the option agreement. The motion stated the following grounds: (1) because the action sounded in contract and the *repurchase* agreement contained an attorney fees provision, they were entitled to an award of attorney fees under Civil Code section 1717; (2) based on their assertion of the *option* agreement as an affirmative defense, which also included an attorney fees provision, defendants were entitled to such fees under Code of Civil Procedure section 1021, to the extent the litigation involved the affirmative defense.

The trial court denied defendants' attorney fees motion. Based on the illegality of the repurchase agreement and "to prevent defendants from profiting by their knowing involvement in the illegal transaction," the trial court determined that attorney fees were unavailable under that agreement. The court also found that defendants could not recover attorney fees under the option agreement, which authorized fees to the prevailing party if a "legal action" or "proceeding" "is brought for the enforcement of this Agreement or because of an alleged dispute, breach, default, or misrepresentation in connection with any provision of this Agreement." It explained that defendants had not "brought" an action for the enforcement of the agreement. Moreover, even though the trial court considered whether the option agreement was intended as a novation to the repurchase agreement, it ultimately concluded that "none of the provisions in the Option Agreement were actually 'in dispute.' "

The Court of Appeal majority reversed the trial court's judgment in part. It agreed with the trial court that the repurchase agreement was "entirely void and unenforceable" because it failed to comply with the subdivision map laws of both Nevada and California. Like the trial court, the majority concluded that attorney fees were unavailable under the repurchase agreement.

4

The Court of Appeal majority, however, held that defendants were entitled to attorney fees under the option agreement.  The majority determined that defendants' assertion of the option agreement and the affirmative defense of novation fell within the broad definition of "proceeding," which may refer to a " ' " mere procedural step that is part of the larger action or special proceeding." ' " (Quoting *Zellerino v. Brown* (1991) 235 Cal.App.3d 1097, 1105.) In addition, though not strictly necessary to its holding, the majority concluded that the affirmative defense also constituted a "legal action"[1] based mainly on the reasoning of *Windsor Pacific LLC v. Samwood Co., Inc.* (2013) 213 Cal.App.4th 263, 274-275 (*Windsor Pacific*).  As discussed further below, *Windsor Pacific* rejected the contrary holdings of *Exxess Electronixx v. Heger Realty Corp.* (1998) 64 Cal.App.4th 698 (*Exxess*) and *Gil v. Mansano* (2004) 121 Cal.App.4th 739 (*Gil*), to conclude:  "To the extent that either *Exxess* or *Gil* suggests, or can be read to support the proposition, that the word 'action' does not encompass a defense, we disagree." (*Windsor Pacific*, *supra*, 213 Cal.App.4th at p. 276; see *Gil*, *supra*, 121 Cal.App.4th at p. 747 (dis. opn. of Armstrong, J.).)

Relying on *Windsor Pacific* and Justice Armstrong's dissent in *Gil*, the Court of Appeal majority concluded that " '[r]aising . . . an affirmative defense is legally the same as bringing an "action" to enforce it.' "  The majority explained that by raising the option agreement as a novation, "defendants sought to enforce the integration clause and by doing so to accomplish a material purpose of the option agreement:  the extinguishment of the repurchase agreement."  Further, the majority found the fee provision's language — "in connection with" — to be

---

[1]     The opinion uses "action" and "legal action" interchangeably.  Any gloss on the word "legal" does not impact the issues in this case.

"broad enough" to encompass a dispute over the effect of the option agreement's integration clause.

In rejecting Mountain Air's urging to distinguish *Windsor Pacific*, the majority below did not find significant either the absence or presence of the words "brought" or "brings": "To hold that attorney fees clauses referring to ' "action[s] brought to enforce" ' (*Gil*, *supra*, 121 Cal.App.4th at p. 742) have a materially different meaning from those referring to ' "action[s] . . . to enforce" ' (*Windsor Pacific*, *supra*, 213 Cal.App.4th at p. 268, fn. 1) elevates form over substance and fiction over reality."

We granted review to resolve this split of authority.

## DISCUSSION

### A. Standard of Review

" 'On review of an award of attorney fees after trial, the normal standard of review is abuse of discretion. However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law.' " (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175, quoting *Carver v. Chevron U.S.A., Inc.* (2002) 97 Cal.App.4th 132, 142.) In other words, "it is a discretionary trial court decision on the propriety or amount of statutory attorney fees to be awarded, but a determination of the legal basis for an attorney fee award is a question of law to be reviewed de novo." (*Carver v. Chevron U.S.A., Inc.*, at p. 142; see *Connerly v. State Personnel Bd.*, at p. 1175 ["Under some circumstances, this may be a mixed question of law and fact and, if factual questions predominate, may warrant a deferential standard of review."].) In this case, where the material facts are largely not in dispute, our review is de novo.

6

## B. Background

Under the American rule, each party to a lawsuit ordinarily pays its own attorney fees. (*Tract 19051 Homeowners Assn. v. Kemp* (2015) 60 Cal.4th 1135, 1142.) Code of Civil Procedure section 1021, which codifies this rule, provides: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties . . . ." In other words, section 1021 permits parties to " 'contract out' of the American rule" by executing an agreement that allocates attorney fees. (*Trope v. Katz* (1995) 11 Cal.4th 274, 279; see *Santisas v. Goodin* (1998) 17 Cal.4th 599, 607, fn. 4 (*Santisas*) [Code Civ. Proc., § 1021"does not independently authorize recovery of attorney fees"].) Thus, " '[p]arties may validly agree that the prevailing party will be awarded attorney fees incurred in any litigation between themselves, whether such litigation sounds in tort or in contract.' " (*Santisas*, *supra*, 17 Cal.4th at p. 608, quoting *Xuereb v. Marcus & Millichap, Inc*. (1992) 3 Cal.App.4th 1338, 1341.)

If such litigation does sound in contract, however, an agreement allocating attorney fees may be "within the scope of [Civil Code] section 1717" and subject to its restrictions.[2] (*Santisas*, *supra*, 17 Cal.4th at p. 617.) "Before section 1717 comes into play, it is necessary to determine whether the parties entered an agreement for the payment of attorney fees, and if so, the scope of the attorney fee

---

[2] Civil Code section 1717, subdivision (a), provides: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." The provision defines "the party prevailing on the contract" as "the party who recovered a greater relief in the action on the contract." (*Id*., subd. (b)(1).)

agreement." (*Maynard v. BTI Group, Inc*. (2013) 216 Cal.App.4th 984, 990.) This determination requires us to apply traditional rules of contract interpretation. (*Santisas*, *supra*, 17 Cal.4th at p. 608.)

Accordingly, we first consider the mutual intention of the parties at the time the contract providing for attorney fees was formed. (Civ. Code, § 1636.) Our initial inquiry is confined to the writing alone. (*Id*., § 1639; see *Santisas*, *supra*, 17 Cal.4th at p. 608.) " 'The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage" ([Civ. Code], § 1644), controls judicial interpretation. (*Id*., § 1638.) Thus, if the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning.' [Citations.]" (*Santisas*, *supra*, 17 Cal.4th at p. 608; see *Harris v. Klure* (1962) 205 Cal.App.2d 574, 577-578.) At the same time, we also recognize the "interpretational principle that a contract must be understood with reference to the circumstances under which it was made and the matter to which it relates. (Civ. Code, § 1647)." (*Xuereb v. Marcus & Millichap, Inc*., *supra*, 3 Cal.App.4th at p. 1344.)

### C. Is the Assertion of an Affirmative Defense an Action or Proceeding?

The option agreement here contained the following attorney fees provision: "Litigation Costs. If *any legal action or any other proceeding*, including arbitration or an action for declaratory relief[,] is brought for the enforcement of this Agreement or *because of an alleged dispute, breach, default, or misrepresentation in connection with any provision of this Agreement*, the prevailing party shall be entitled to recover reasonable attorney fees, expert fees and other costs *incurred in that action or proceeding*, in addition to any other relief to which the prevailing party may be entitled." (Italics added.) We begin

with the meaning of "action." The parties here agree that an "action" is synonymous with a lawsuit (see Code Civ. Proc. § 22), and includes the assertion of any affirmative defenses. (See *Palmer v. Agee* (1987) 87 Cal.App.3d 377, 387 ["defenses raised in the answer to the complaint are a real part of any action"]; see also *Nassif v. Municipal Court* (1989) 214 Cal.App.3d 1294, 1298 ["action is not limited to the complaint but refers to the entire judicial proceeding at least through judgment"].) They diverge, however, on the implications of this conclusion.

Emphasizing the word's broad and inclusive meaning, defendants reason that because an action *includes* the assertion of an affirmative defense, the asserted defense, therefore, *constitutes* an action. (See *Windsor Pacific*, *supra*, 213 Cal.App.4th at pp. 275-276.) In that regard, the Court of Appeal majority below reasoned that " '[r]aising . . . an affirmative defense is legally the same as bringing an "action" to enforce it.' " Mountain Air, however, counters that the assertion of an affirmative defense is a discrete procedural event *within* a lawsuit and is not itself a separate action or proceeding; thus, it is erroneous to equate an affirmative defense with an action or proceeding. (See *Gil*, *supra*, 121 Cal.App.4th at p. 744 ["assertion of a defense does not constitute the bringing of an action to accomplish that goal"]; *Exxess*, *supra*, 64 Cal.App.4th at p. 712 ["we cannot equate raising a 'defense' with bringing an 'action' or 'proceeding' "].)

We first address the underlying supposition that the assertion of an affirmative defense equates to or constitutes an action because it is encompassed within the latter. We cannot agree with this reasoning. Even though an action may refer to the "entire judicial proceeding" (*Nassif v. Municipal Court*, *supra*, 214 Cal.App.3d at p. 1298), this does not mean that each individual occurrence within this process is itself an "action." In this attorney fees context, "courts generally treat the term 'action,' as defined by Code of Civil Procedure section 22, as referring to the *whole* of a lawsuit rather than to discrete proceedings within a

lawsuit." (*Frog Creek Partners, LLC v. Vance Brown, Inc*. (2012) 206 Cal.App.4th 515, 527, fn. 6, italics added [petition to compel arbitration is not independent of other contract claims in lawsuit]; see *Salawy v. Ocean Towers Housing Corp*. (2004) 121 Cal.App.4th 664, 672 [" 'an action to enforce' does not refer to specific pleadings or steps within the action or a defense"]; see also *Cornette v. Department of Transp*. (2001) 26 Cal.4th 63, 76 [affirmative defense of design immunity was " 'part and parcel of the pending action' "].)  In other words, while an affirmative defense is a "real *part of* any action" (*Palmer v. Agee*, *supra*, 87 Cal.App.3d at p. 387, italics added), it does not, in and of itself, constitute an "action" for purposes of recovering attorney fees.

Alternatively, defendants maintain that the attorney fees provision nonetheless applies here because it extends not just to an "action," but also to "any other proceeding," a term the Court of Appeal below found "suggests something broader."  The word "proceeding" can take on "different meanings in different contexts." (*Zellerino v. Brown*, *supra*, 235 Cal.App.3d at p. 1105 [discovery demand is a proceeding for purposes of obtaining relief under Code Civ. Proc., § 473].)  For example, "proceeding" has been construed narrowly as "an action or remedy before a court," and, as broadly as " '[a]ll the steps or measures adopted in the prosecution or defense of an action' " (*Zellerino v. Brown*, at p. 1105).  Defendants argue that asserting an affirmative defense falls squarely within an expansive definition of a "proceeding."

While the word "proceeding" can generally refer to " 'a mere procedural step that is part of the larger action or special proceeding' " (*Zellerino v. Brown*, *supra*, 235 Cal.App.3d at p. 1105), we conclude that it is used here in a narrower sense, similar to "an action . . . before a court." (*Ibid*.)  In this provision, the term "any other proceeding" is immediately followed by the phrase "including arbitration or an action for declaratory relief," which both refer to the entirety of a

10

case and not individual procedural steps within a case.  This suggests that "proceeding" is likewise used in a limited sense.  (See *Kleffman v. Vonage Holdings Corp.* (2010) 49 Cal.4th 334, 343 [word's meaning "takes color from the other words listed in the same provision"].)

To the extent that the meaning of "proceeding" is comparable to a "legal action," this does not render either term superfluous because "legal action" is listed as an *example* of an "other proceeding."  " 'Where general words follow specific words in a [contractual provision] the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words.  Where the opposite sequence is found, i.e., specific words following general ones, the doctrine is equally applicable, and restricts application of the general terms to things that are similar to those enumerated.' " (*Barrett v. Superior Court* (1990) 222 Cal.App.3d 1176, 1190 [ejusdem generis doctrine is " 'an attempt to reconcile an incompatibility between specific and general words' " so all words may be " 'construed together, and no words will be superfluous' "]; see *Nyard, Inc. v. Uusi-Kerttula* (2008) 159 Cal.App.4th 1027, 1045 & fn. 4 [applying ejusdem generis doctrine to interpret contractual provision].)  Here, the general word "proceeding" both follows the specific term "legal action," and also precedes the specific words "arbitration" and "an action for declaratory relief.

The inclusion of the word "brought" is also consistent with a narrow reading of this fees provision.  "[W]ords in a contract are to be understood in their usual sense.  (Civ. Code, § 1644.)"  (*Xuereb v. Marcus & Millichap, Inc.*, *supra*, 3 Cal.App.4th at p. 1344.)  As Mountain Air points out, affirmative defenses are generally pleaded, asserted, or raised, but typically not "brought" by a party.  (See 1 Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2016) ¶ 6:431; *Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 239;

11

see also *Bruns v. E-Commerce Exchange Inc.* (2011) 51 Cal.4th 717, 723.)
Contrary to defendants' suggestion, we do not adopt a technical reading of the
word "brought" as referring only to the initiation of a lawsuit.  Instead, "brought"
simply supplies further context to the relevant phrase "brought for the enforcement
of this Agreement or because of an alleged dispute."  (See *Gil*, *supra*, 121
Cal.App.4th at p. 745 & fn. 4 [under fee provision's "very narrowly drawn"
language, " 'action brought to enforce the terms' of the release . . . contemplates
the bringing of a court action"]; *Exxess*, *supra*, 64 Cal.App.4th at p. 712 ["we
cannot equate raising a 'defense' with bringing an 'action' or 'proceeding' "].)

A broad interpretation of "proceeding" would likewise mean that court
rulings on pleadings filed in a legal action — not just with respect to an
affirmative defense asserted in an answer — could each be considered a new
"proceeding."  Applying such an interpretation of "proceeding" in order to place
affirmative defenses within its reach could theoretically authorize multiple fee
awards in a single case, a result inconsistent with the conventional understanding
of how contractual attorney fees are awarded.  (See *Frog Creek Partners, LLC v.
Vance Brown, Inc.*, *supra,* 206 Cal.App.4th at p. 546 [rejecting view that "party
who succeeded on *any* dispute related to contract's enforcement could claim fees,
even if the party was not the prevailing party at trial"]; see also *DisputeSuite.com,
LLC v. Scoreinc.com* (2017) 2 Cal.5th 968, 977 [Civ. Code, § 1717 attorney fees
available to party who "prevailed on the contract overall, not to a party who
prevailed only at an interim procedural step"].)  We decline to read the provision
so broadly without a clear indication of such intent.  (See Civ. Code, § 1644.)

"[I]n construing a contract the court's function is not merely to import all of
the possible definitions or even the broadest definition, but to glean the meaning of
the words *from the context and usage of the words in the contract itself.*"
(*Mirpad, LLC v. California Ins. Guarantee Assn*. (2005) 132 Cal.App.4th 1058,

12

1069.)  Mindful of that function, we conclude that while alternative definitions of the words "action," "proceeding," or "brought" may lend support to defendants' position, the most natural reading of this provision, considering the words in context and the provision as a whole, is that the assertion of an affirmative defense is *not* contemplated as an "action" or a "proceeding."[3]

We address defendants' remaining arguments on this issue.  They assert that a narrow interpretation of the words "action" or "proceeding" — one that excludes an "affirmative defense" from their meaning — ignores the "inherent similarities" between claims and affirmative defenses.  On that note, they maintain that whether a claim is raised by an affirmative defense or alleged in a cross-complaint, a defendant must prove the same facts and address the same arguments in each instance.  They further argue that there is "no logical reason" why a party would "choose a form for raising its argument that would *foreclose* any possible recovery of attorney fees, when there is another form that would permit them."

We recognize that there are similar pleading and proof requirements for raising a claim in a complaint or cross-complaint, and asserting an affirmative defense.  (See 5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 1082, p. 515 ["An affirmative defense must be pleaded in the same manner as if the facts were set forth in a complaint."]; 1 Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, *supra*, ¶ 6:431 ["any issue on which defendant bears the burden of proof at trial is 'new matter' and must be specially pleaded in the answer"]; *id*., ¶ 6:435.)  However, as Mountain Air points out, a defendant who pleads an affirmative defense cannot be liable for malicious prosecution, no matter how

---

[3]    We disapprove *Windsor Pacific LLC v. Samwood Co., Inc.*, *supra*, 213 Cal.App.4th 263, to the extent it is inconsistent with the views expressed in this opinion.

meritless the defense (see *Triplett v. Farmers Ins. Exchange* (1994) 24 Cal.App.4th 1415, 1424); in contrast, a malicious prosecution action may lie if a defendant seeks relief by filing a nonmeritorious cross-complaint (*Bertero v. National General Corp.* (1974) 13 Cal.3d 45, 50-53). Thus, there may be certain situations where a defendant would prefer not to raise a claim by way of a cross-complaint, but instead raise such new matter by asserting an affirmative defense. Contrary to defendants' suggestion, these pleading alternatives do not amount to an unusual arrangement requiring specific language in an attorney fees provision (see Civ. Code, § 1644), much less constitute an absurdity requiring us to reject such an interpretation (see *id.*, § 1638).

### D. Other Basis to Recover Attorney Fees

Though we conclude that defendants' assertion of the option agreement as an affirmative defense does not constitute either an "action" or "proceeding," we next consider whether defendants may otherwise recover fees under that agreement's attorney fees provision. As set out above (see *ante*, at p. 8), the fee provision stated: "Litigation Costs. If *any legal action or any other proceeding*, including arbitration or an action for declaratory relief [,] is brought for the enforcement of this Agreement or *because of an alleged dispute, breach, default, or misrepresentation in connection with any provision of this Agreement*, the prevailing party shall be entitled to recover reasonable attorney fees, expert fees and other costs incurred in that action or proceeding, in addition to any other relief to which the prevailing party may be entitled." (Italics added.)

Neither side challenges that Mountain Air's suit for specific performance and breach of the repurchase agreement was an "action" for purposes of the attorney fees provision. Moreover, it cannot be said that Mountain Air's action was "brought for the enforcement" of the option agreement, which gave

14

defendants the exclusive right, but not the obligation, to repurchase the South Tower.  Instead, the issue is whether Mountain Air's action on the *repurchase agreement* was "brought . . . because of an alleged dispute . . . in connection with any provision of" the *option agreement*.  The provision at issue is the "integration" clause, which states the option agreement "expressly supersedes all previous or contemporaneous agreements, understandings, representations, or statements between the parties respecting this matter."  Clearly, the parties dispute whether the option agreement reflects an intent to extinguish the repurchase agreement. We begin with the meaning of the relevant phrases, "because of," "an alleged dispute," and "in connection with."

" 'Because of' is a term in common usage.  It connotes a causal link . . . ." (*In re M.S.* (1995) 10 Cal.4th 698, 717 [discussing language of causation in Pen. Code, §§ 422.6, 422.7]; see also *Gross v. FBL Financial Services, Inc.* (2009) 557 U.S. 167, 176 [dictionary definition of "because of" means " 'by reason of:  on account of' "].)  Next, the word "dispute" is a "general term that includes any conflict or controversy . . . [and] includes a conflict giving rise to an action." (*Thompson v. Miller* (2003) 112 Cal.App.4th 327, 337 [clause provided attorney fees to "prevailing party in any dispute under this Agreement"].)  A "dispute under" an agreement can extend to the agreement's "effect" or "validity."  (*Ibid.*) Next, the primary definition of the word "alleged," which qualifies "dispute," means "asserted to be true or to exist."  (Webster's 3d New Internat. Dict. (2002) p. 55.)  Finally, the term "in connection with" is broad, and has been interpreted to extend to both contract and tort claims in a contractual attorney fees provision. (*Cruz v. Ayromloo* (2007) 155 Cal.App.4th 1270, 1277 ["the lease contemplated recovery of attorneys' fees for all claims in any civil action *in connection* with the lease"]; see *Maynard v. BTI Group, Inc.*, *supra*, 216 Cal.App.4th at p. 993 [broadly construing term "any dispute" in attorney fees clause to mean "in

15

connection with"].)  With these definitions in mind, we turn to the facts of this case.

Mountain Air's action on the repurchase agreement sought to compel defendants to buy back the South Tower.  Defendants countered that the parties' option agreement expressly superseded the repurchase agreement, and, as a result, they had the exclusive right to repurchase the South Tower without any obligation to do so.  In short, the repurchase agreement and option agreement both concerned the transfer of the same property between the same parties,[4] but provided alternate and conflicting versions of the parties' rights and responsibilities.  As the Court of Appeal majority emphasized, "[t]here can be no doubt here that Mountain Air and defendants disputed the meaning and effect of the option agreement, including its integration clause," and whether it extinguished defendants' obligations under the repurchase agreement.  We conclude that Mountain Air's action involved an "alleged dispute . . . in connection with" the option agreement, as required under the attorney fees provision.

The question remains, did Mountain Air bring its action "*because of*" an "alleged dispute . . . in connection with" the option agreement?  Mountain Air's second amended complaint focused on the repurchase agreement (and underlying guaranty), and did not otherwise reference the option agreement.  Defendants subsequently raised the option agreement as a novation defense in their answer.  Mountain Air argues that the enforcement or interpretation of the option

---

[4]     The trial court found that "Mountain Air is wholly owned and controlled by Scarpa, and Sundowner is the alter ego of Madjlessi and Larsen."  Thus, even though Madjlessi and Larsen signed the option agreement but not the repurchase agreement, the court concluded it was a "technical distinction," and did not impact whether the option agreement superseded the repurchase agreement as a novation.  Likewise, this distinction does not affect the issues on appeal here.

16

agreement was not the declared *purpose* of its lawsuit, and that the question of the agreement's validity did not *cause* Mountain Air to file suit. While Mountain Air's argument has superficial appeal, we conclude that it does not withstand scrutiny.

Though the meaning of "because of" involves a "causal link" (*In re M.S.*, *supra*, 10 Cal.4th at p. 717), we need not decide its precise contours or "the kind or degree of causation required" here. (*Harris v. City of Santa Monica*, *supra*, 56 Cal.4th at pp. 215, 217 [explaining "but for," "substantial factor," "motivating factor" as plausible meanings of "because of" under Gov. Code, § 12940, subd. (a)].) Once Mountain Air filed suit to compel defendants to repurchase the South Tower, the action necessarily implicated the validity of *both* the repurchase agreement and the option agreement. (See *IMO Development Corp. v. Dow Corning Corp.* (1982) 135 Cal.App.3d 451, 463 [promissory note and sales agreement were "inextricably intertwined" because borrower "alleged invalidity of [sales agreement's] waiver as an affirmative defense to the cross-complaint" for collection on note].) The parties were forced to litigate which of these competing and inconsistent agreements was, in the words of the trial court, the "sole agreement controlling the rights of the parties." Under these circumstances, we conclude that Mountain Air's action to enforce the repurchase agreement was brought "because of an alleged dispute . . . in connection with" the option agreement.

We are not persuaded by Mountain Air's argument that attorney fees are not available because the pertinent fees clause appears in the option agreement, and not the repurchase agreement on which it brought suit. In determining whether a contract contains an applicable attorney fees provision, courts have "construe[d] together several documents concerning the same subject and made as part of the same transaction [citations] even though the documents were not

executed contemporaneously [citation] and do not refer to each other." (*Boyd v. Oscar Fisher Co*. (1989) 210 Cal.App.3d 368, 378; see Civ. Code, § 1642.) Moreover, contrary to the dissent's suggestion (see dis. opn. of Kruger, J., *post*, at p. 7), merely construing these two agreements together would not undermine the trial court's finding of novation. "While it is the rule that several contracts relating to the same matters are to be construed together (Civ. Code, sec. 1642), it does not follow that for all purposes they constitute one contract." (*Malmstedt v. Stillwell* (1930) 110 Cal.App. 393, 398.) " '[J]oint execution would require the court to construe the two agreements in light of one another; it would not merge them into a single written contract.' " (*Pankow Const. Co. v. Advance Mortg. Corp*. (9th Cir.1980) 618 F.2d 611, 616.)

In addition, as a practical matter, it is unclear how a court could determine the parties' obligations in this purchase transaction *without* construing these inherently conflicting agreements together. In fact, the trial court here undertook a comprehensive analysis comparing the terms of the repurchase agreement and the option agreement, both of which concerned "the identical topic, the purchase of the South Tower." After carefully analyzing how these agreements were similar and how they materially differed, the court rejected Mountain Air's claim that the option to repurchase the South Tower was "complementary" or "parallel" to the repurchase agreement. It instead found "convincing evidence" that the parties believed the "Option Agreement was the sole operative agreement of the parties and that the Repurchase Agreement had been cancelled." Indeed, the very nature of defendants' defense of novation, the validity of which is not before us, required determining whether the option agreement superseded and replaced the terms and conditions of the repurchase agreement. (See *Producers' Fruit Co. v. Goddard* (1925) 75 Cal.App. 737, 754 ["agreement is itself evidence evincive of an intention by both parties that it should constitute a novation"; subsequent

18

agreement was "widely divergent or different in terms" from original contract].) "Whether the new contract was intended as a substitute for the old may be inferred where the terms of the new contract differ widely from those of the old, especially where the two are entirely inconsistent and cannot be operative at the same time." (14A Cal.Jur.3d (2008) Contracts, § 302, fns. omitted.) Accordingly, construing the repurchase agreement in light of the option agreement was necessary.

In that regard, the dissent overstates the import of the word "alleged," which simply means "asserted to be true or to exist." (Webster's 3d New Internat. Dict., *supra*, p. 55; see *ante*, at p. 15.) Fairly read, the term "alleged dispute" means a purported controversy, one that is "in connection with" the option agreement. Here, the parties had a dispute about whether Sundowner was obligated to repurchase the South Tower. Asserting its side of the dispute, Mountain Air brought its action to enforce the repurchase agreement against defendants. The dispute was closely connected to the option agreement because under that agreement — which contained an integration clause making it the parties' sole binding agreement in this transaction — Sundowner had the option, but not the obligation, to repurchase the South Tower. Mountain Air's action was thus "brought . . . because of an alleged dispute . . . in connection with" the option agreement.

As the dissent points out, Mountain Air's second amended complaint did not explicitly mention the option agreement, much less allege any connection with it. However, such an allegation was not required under the attorney fees provision. Even giving maximum value to the word "alleged," the provision merely required that the *dispute* be alleged and that the dispute also be "in connection with" the option agreement. As discussed above, both are true here.

In sum, we decline to take an overly formalistic approach to deciding whether a prevailing party is entitled to contractual attorney fees. Certainly, any

19

inquiry begins with the language of the attorney fees provision itself. (See *Santisas*, *supra*, 17 Cal.4th at pp. 607-608.) However, as this case illustrates, a complicated and difficult set of facts may sometimes obscure whether a claim on which attorney fees are incurred is within the scope of a fees provision. (See *id.* at p. 602; see also *Xuereb v. Marcus & Millichap, Inc., supra*, 3 Cal.App.4th at p. 1344 [none of the various tortious causes of action was " 'quite independent of the basic contractual arrangement' "].) Thus, if the facts in future cases warrant it, courts "should consider the pleaded theories of recovery, the theories asserted and the evidence produced at trial, if any, and also any additional evidence submitted on the motion in order to identify the legal basis of the prevailing party's recovery." (*Boyd v. Oscar Fisher Co.*, *supra*, 210 Cal.App.3d at p. 377.)

### CONCLUSION

Based on the foregoing, we affirm the Court of Appeal's judgment reversing the trial court's denial of an award of attorney fees.

CHIN, J.

WE CONCUR:

CANTIL-SAKAUYE, C. J.
WERDEGAR, J.
CUÉLLAR, J.

**DISSENTING OPINION BY KRUGER, J.**

The parties in this case signed a contract containing a clause providing for an award of attorney fees to the prevailing party "[i]f any legal action or any other proceeding . . . is brought for the enforcement of this Agreement or because of an alleged dispute, breach, default, or misrepresentation in connection with any provision of this Agreement." One party later sued the others for breach of a previously made agreement, and the defendants successfully asserted, as an affirmative defense, that the contract had superseded the parties' earlier agreement. The question before us is whether the defendants are entitled to attorney fees under the contract.

Defendants here argue that they are entitled to attorney fees because their affirmative defense was a "legal action or . . . other proceeding . . . brought for the enforcement" of the contract. The majority rightly rejects defendants' argument as inconsistent with the ordinary meaning of the contract language: A defendant's affirmative defense based on a contract is not an "action" or "proceeding . . . brought for the enforcement" of the contract, and there is no sense in which *plaintiff's* action was "brought for the enforcement" of the contract containing the fee clause. But the majority goes on to hold that defendants are nevertheless entitled to attorney fees, based on its conclusion that plaintiff's action was "brought . . . because of an alleged dispute . . . in connection with" the contract.

1

Because this interpretation of the contract language, too, defies normal usage, I respectfully dissent.

## I.

This case grows out of a long business relationship between real estate developers Steven Scarpa and Bijan Madjlessi. In December 2005, Sundowner Towers (Sundowner), a limited liability company whose members are Madjlessi and Glenn Larsen, made two agreements: (1) to sell Scarpa a building in Reno called the South Tower and (2) to later repurchase the South Tower for $7 million plus a 12 percent inflation factor. (Like the parties, I refer to this second agreement as the repurchase agreement.) Madjlessi and Larsen personally guaranteed Sundowner's obligations under the repurchase agreement. The agreement contained an attorney fee clause authorizing an award of fees and costs to the prevailing party in the event "this Agreement or the transaction contemplated herein gives rise to a lawsuit, arbitration, or other legal proceeding between the parties."

At the time of the transaction, Scarpa assigned his rights under the agreements to plaintiff Mountain Air Enterprises, a limited liability company wholly owned by Scarpa, and Sundowner transferred the property to plaintiff. Not long thereafter, plaintiff, Madjlessi, and Larsen executed an agreement (which we are calling the option agreement) giving Madjlessi and Larsen the exclusive right to buy the South Tower during an option period. The agreement contained an integration clause stating that the agreement "expressly supersedes all previous or contemporaneous agreements, understandings, representations, or statements between the parties respecting this matter." It also contained the following attorney fee provision: "If any legal action or any other proceeding, including arbitration or an action for declaratory relief[,] is brought for the enforcement of this Agreement or because of an alleged dispute, breach, default, or

2

misrepresentation in connection with any provision of this Agreement, the prevailing party shall be entitled to recover reasonable attorney fees, expert fees and other costs incurred in that action or proceeding, in addition to any other relief to which the prevailing party may be entitled."

Sundowner never repurchased the property. Plaintiff sued Sundowner, Madjlessi, and Larsen (collectively defendants), seeking specific performance of the repurchase agreement, damages for breach of that agreement, and damages for Madjlessi's and Larsen's breach of their guarantee of that agreement. In their answer, defendants claimed, inter alia: (1) the option agreement was a novation that superseded the repurchase agreement; and (2) the repurchase agreement was illegal and therefore unenforceable. The trial court agreed with defendants on both points, and entered judgment in their favor.

Defendants then sought attorney fees under both the repurchase agreement and the option agreement. The trial court denied the request, holding that the repurchase agreement was illegal and void in its entirety, attorney fee clause included, and that the attorney fee clause in the option agreement was inapplicable. The Court of Appeal agreed with the trial court that attorney fees were unavailable under the repurchase agreement, emphasizing that defendants, who are "sophisticated developers," were parties to drafting the illegal repurchase agreement and should not be permitted "to benefit from the illegality *they* participated in creating." But the Court of Appeal held that defendants were entitled to attorney fees under the option agreement, reasoning that the affirmative defense was a "legal action or any other proceeding" within the meaning of the fee clause. The Court of Appeal also concluded that the affirmative defense fell "within the subject matter covered by the option agreement's fees provision" because the novation defense both sought to enforce the integration clause of the

3

option agreement and was raised "because of a dispute 'in connection with' " the option agreement.

**II.**

The question before us is one of contract interpretation. (See *Santisas v. Goodin* (1998) 17 Cal.4th 599, 608 [applying "the ordinary rules of contract interpretation" to construe an attorney fee clause in a contract for the sale of real property].) "Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. (Civ. Code, § 1636.) Such intent is to be inferred, if possible, solely from the written provisions of the contract. (*Id.*, § 1639.) The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' (*id.*, § 1644), controls judicial interpretation. (*Id.*, § 1638.)" (*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 821-822.)

Applying these rules, the majority correctly concludes that, by raising their affirmative defense of novation, defendants did not thereby "bring" an "action" or "proceeding" within the meaning of the attorney fee provision of the option agreement. As the majority explains, an affirmative defense is not an "action," nor is it a "proceeding" — at least, not the sort of "proceeding" the contract language contemplates. (Maj. opn., *ante*, at pp. 9-11.) Nor, finally, is it consistent with normal usage to say that a defendant has "brought" an affirmative defense. (*Id.* at p. 11.) Giving the contractual terms their ordinary meaning, the evident focus of the fee provision is on the nature of the "action" or "proceeding" brought by the plaintiff, not on any affirmative defenses that might be raised in response.

This conclusion provides a complete response both to the Court of Appeal decision and to defendants, whose sole argument before this court has been that the provision's reference to bringing an "action" or "proceeding" should be read to

4

encompass the raising of an affirmative defense. The majority nevertheless goes on to consider whether the Court of Appeal's judgment can be affirmed on the alternative ground that *plaintiff's* action to enforce the repurchase agreement might somehow trigger the attorney fees provision of the option agreement. The majority concludes, sensibly enough, that plaintiff's action to enforce the repurchase agreement was not an action " 'brought for the enforcement' of the option agreement." (Maj. opn., *ante*, at p. 14.) But it then concludes that defendants are still entitled to attorney fees because plaintiff's action was " 'brought . . . because of an alleged dispute . . . in connection with' the option agreement." (*Id.* at p. 19.) Here, in my view, is where the majority goes astray.

It is true, as the majority says, that the parties had a "dispute . . . in connection with" the option agreement. Plaintiff sought to enforce a contract, the repurchase agreement, that defendants argued was superseded by the option agreement. But the clause also says that the dispute must be "alleged," and that the action must be brought "because of" the "alleged dispute." These terms are fatal to defendants' claim for attorney fees: Plaintiff, unlike defendants, has not "alleged" any dispute about the option agreement, nor did it bring its action "because of" any such "alleged dispute."

"According to both legal and nonlegal dictionaries, the verb 'allege' means to 'plead' or 'charge' matters having legal significance . . . . [Citations.]" (*In re Eddie M.* (2003) 31 Cal.4th 480, 496.)[1] In bringing its action, at no time did

---

[1] The majority observes that the dictionary also defines the word " 'alleged' " to mean " 'asserted to be true or to exist.' " (Maj. opn., *ante*, at p. 15.) In the context of a "legal action or dispute" — the context to which the attorney fee clause is addressed — the way litigants normally "assert [matters] to be true" is to "allege" them in their pleadings. In any event, plaintiff did not bring its action "because of" an "asserted" dispute about the option agreement, either.

5

plaintiff ever " 'plead' " or " 'charge' " any dispute in connection with the option agreement. Indeed, the option agreement is not even mentioned in its complaint, which simply alleges that defendants failed to comply with their obligations under the repurchase agreement.

Of course, defendants, in response, did allege a dispute regarding whether the option agreement was meant to supersede the repurchase agreement. That allegation formed the basis for its affirmative defense. But did plaintiff bring its action "because of" defendants' alleged affirmative defense? Plaintiff might certainly have expected that defendants would raise the option agreement in response to its complaint, but it seems rather more accurate to say it brought its suit in spite of — not "because of" — any affirmative defenses its adversaries might raise in their responsive pleadings.

Even if, as the majority asserts, the attorney fee clause required only that some option agreement-related dispute serve as a " 'causal link' " in the chain of circumstances that prompted plaintiff to file its lawsuit to enforce the repurchase agreement (maj. opn., *ante*, p. 17), the argument would still run aground, because we have no basis to conclude that any option agreement-related dispute was such a link here. For all we know, defendants would not have complied with the terms of the repurchase agreement even if the option agreement had never existed. The possibility is more than merely theoretical in this case, since defendants also successfully justified their nonperformance on the independent ground that the repurchase agreement was illegal to begin with. (Cf. Prosser & Keeton, Torts (5th ed. 1984), § 41, p. 265 ["An act or omission is not regarded as a cause of an event if the particular event would have occurred without it."].)

The majority attempts to get around this conclusion by suggesting that the repurchase agreement and option agreement "were 'inextricably intertwined,' " (maj. opn., *ante*, at p. 17, quoting *IMO Development Corp. v. Dow Corning Corp.*

6

(1982) 135 Cal.App.3d 451, 463), such that plaintiff's efforts to enforce the repurchase agreement (which, as previously noted, contained its own attorney fee provision) necessarily triggered the attorney fee provision of the option agreement. (*Id.* at pp. 17-18, citing *Boyd v. Oscar Fisher Co.* (1989) 210 Cal.App.3d 368, 378, and Civ. Code, § 1642.)  But the entire basis of defendants' victory on their second affirmative defense was that the two agreements were not intertwined. Rather, as the trial court concluded, the option agreement was a novation that entirely superseded the repurchase agreement.  (See, e.g., Civ. Code, §§ 1530, 1531, subd. 1; compare *IMO Development Corp.*, at p. 463 [concluding that a sales agreement and a promissory note executed pursuant to a provision of the sales agreement, in a form attached to the agreement, "constitute[d] part of a single contract"].)

The determination whether contracting parties intended two documents governing the same transaction to be "taken together" (Civ. Code, § 1642) is a question of fact for the trial court (*Vons Cos., Inc. v. Lyle Parks Jr., Inc.* (2009) 177 Cal.App.4th 823, 834, fn. 5; *Versaci v. Superior Court* (2005) 127 Cal.App.4th 805, 814-815), and the trial court's finding on such a question must be upheld if supported by substantial evidence (*Versaci*, at p. 815).  The majority does not explain how this court can construe the documents "together," as though they were "made as parts of substantially one transaction" (Civ. Code, § 1642), when the trial court's finding of novation meant that the parties intended the second agreement to function independently, as a complete replacement for the first (see, e.g., *Beckwith v. Sheldon* (1913) 165 Cal. 319, 323).[2]

---

[2]    The majority quotes decisions observing that two contracts may be "construed together" under Civil Code section 1642 without merging them into a single contract "for all purposes" (*Malmstedt v. Stillwell* (1930) 110 Cal.App. 393,

*(footnote continued on next page)*

7

## III.

It is not difficult to understand the temptation to rewrite the parties'
contract for them.  Plaintiff sued to enforce a contract, the repurchase agreement,
that was not only illegal (because violative of subdivision map laws), but was also
superseded by a later agreement containing the fee provision at issue here.
Defendants' efforts to recover attorney fees under the repurchase agreement were
thwarted because the courts below found that they had been complicit in drafting
an illegal contract and barred them from profiting from it.  Had the parties thought
about these possibilities when they were drafting the option agreement, they might
well have written its fee provision differently.  They might, for example, have
written a clause providing for attorney fees when a suit "implicate[s] the validity
of" the option agreement.  (Maj. opn., *ante*, at p. 17.)  Alternatively, they might
have written a clause that spoke broadly of actions and proceedings, claims and
defenses.

But the option agreement's fee provision says none of these things.  Rather,
it says that attorney fees are payable when a "legal action or any other proceeding
. . . is brought . . . because of an alleged dispute" in connection with the option
agreement.  This language requires a particular kind of connection between
plaintiff's suit and the option agreement, and that connection has not been

_____

*(footnote continued from previous page)*

398) or that jointly executed contracts may be "construe[d] . . . in light of one
another" without being " 'merge[d] . . . into a single written contract' " under Civil
Code section 1642 (*Pankow Const. Co. v. Advance Mortg. Corp.* (9th Cir. 1980)
618 F.2d 611, 616).  (See maj. opn., *ante*, at p. 18.)  Both observations are beside
the point here.  It does not follow from either proposition that a suit to enforce one
contract can be treated as a suit brought either to enforce, or "because of an
alleged dispute . . . in connection with," a different and superseding contract.

8

established here.  The only remaining question is whether we can overlook the omission, and thus give defendants a benefit for which they did not bargain.  I do not believe we can.  I would therefore reverse the judgment of the Court of Appeal.


                                                            **KRUGER, J.**

**WE CONCUR:**

**CORRIGAN, J.**
**LIU, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Mountain Air Enterprises, LLC v. Sundowner Towers, LLC

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 231 Cal.App.4th 805
**Rehearing Granted**

_____

**Opinion No.** S223536
**Date Filed:** July 31, 2017

_____

**Court:** Superior
**County:** Marin
**Judge:** Roy O. Chernus

_____

**Counsel:**

Abramson & Brown, Law Offices of Joe R. Abramson, Joe R. Abramson; Degani & Galston, Law Office of Katharine J. Galston and Katharine J. Galston for Defendants and Appellants.

The Ehrlich Law Firm, Jeffrey I. Ehrlich; Law Office of Erik A. Humber and Erik A. Humber for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Katharine J. Galston
Law Office of Katharine J. Galston
369 S. Doheny Drive, Suite 176
Beverly Hills, CA  90211
(310) 235-3985

Jeffrey I. Ehrlich
The Ehrlich Law Firm
16130 Ventura Boulevard, Suite 610
Encino, CA  91436
(818) 905-3970