Filed 10/28/25  Fiack v. Fiack CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Glenn)

----

| | |
|---|---|
| ANDREW F. FIACK,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>KAREN J. FIACK, as Trustee, etc.,<br><br>    Defendant and Appellant. | C099613<br><br>(Super. Ct. No. 20CV02394) |

This appeal arises out of a dispute between family members.  Appellant Karen J. Fiack (Karen) owned and operated a family farm with her late husband, Andrew A. Fiack (Andy).  They had two sons: respondent Andrew F. Fiack (Andrew) and Seth Fiack (Seth).  Both sons joined the family business, which was organized as a partnership and governed by a partnership agreement (the partnership agreement).

Andy died in February 2020.  Soon thereafter, Andrew learned that Karen and Andy had amended their estate planning documents to disinherit him.  Andrew sued Karen in her capacity as trustee of various family trusts in July 2020.  He alleged that

1

Andy and Karen had orally agreed to bequeath certain property to him if he gave up his job in Washington State and returned to the family farm to work. He sought a constructive trust providing quasi-specific performance of the alleged oral agreement pursuant to Probate Code section 21700.

Following a bench trial, the trial court determined that Andrew failed to prove the existence of an oral agreement by clear and convincing evidence, as required by Probate Code section 21700, subdivision (a)(4), and entered judgment for Karen. Karen then moved for attorneys' fees as costs pursuant to an attorneys' fee provision in the partnership agreement. (Code Civ. Proc., §§ 1021, 1033.5.)[1] The trial court denied the motion and Karen appeals, arguing the action was brought to enforce or interpret the partnership agreement, giving her the right to recover reasonable attorneys' fees. We disagree and affirm the trial court's order.

## I. BACKGROUND

*A.    The Partnership Agreement*

Karen and Andy owned and operated a family farm in Glenn County, which was organized as a partnership. The partnership was governed by a partnership agreement which was executed by each of the family members—Andy, Karen, Andrew, and Seth—on March 25, 2006. The partnership agreement sets forth the rights and duties of the partners and specifies that Andy, Karen, and Seth would each have a 33-percent interest in the partnership. The partnership agreement further specifies that Andrew, who was then living in Washington State, would have a one-percent interest.

The partnership agreement requires that any amendments be in writing and signed by all partners, and contains an attorneys' fee provision which provides, in pertinent part: "In the event suit is brought to enforce or interpret any part of this agreement, the

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

2

prevailing party shall be entitled to recover as an element of his costs of suit, and not as damages, a reasonable attorneys' fee to be fixed by the court."

The parties executed an amendment to the partnership agreement on January 1, 2009 (the first amendment). With the first amendment, Karen withdrew from the partnership, Andy's interest increased to 51 percent and Seth's interest increased to 48 percent. Andrew continued to have a one-percent interest in the partnership, and the other terms of the partnership agreement remained the same.

The remaining members of the partnership—Andy, Seth, and Andrew—executed a second amendment to the partnership agreement on January 1, 2011 (the second amendment). Following the second amendment, Andy held a 51-percent interest in the partnership, Seth held a 29-percent interest, and Andrew held a 20-percent interest. The other terms of the partnership agreement remained the same.

Andy, Seth, and Andrew executed a third and final amendment to the partnership agreement on January 1, 2013 (the third amendment). The third amendment reduced Andy's interest in the partnership to six percent, and increased Seth and Andrew's interests to 49 percent and 45 percent, respectively. As before, the other terms of the partnership agreement remained the same.

B.      *The Alleged Oral Agreement*

Andrew attended college in Washington State and started work there after graduation. He came home for a visit in July 2010, after learning that Andy had been diagnosed with cancer. Father and son spoke privately during the visit. According to Andrew, Andy encouraged him to come home and work on the family farm in exchange for an inheritance. An oral agreement regarding the particulars was allegedly reached in a subsequent telephone conversation.

According to Andrew, the essential terms of the alleged oral agreement were: (1) Andrew would become a general partner in the partnership, with an escalating percentage interest, beginning with 20 percent and reaching 49.5 percent over a period of years as

3

Andy stepped away from the business and reduced his percentage; and (2) Andy and Karen would change their estate planning documents to leave equal shares of their estate to each brother.

C.      *Andrew Comes Home*

Andrew returned to the family farm in October 2010. As noted, Andy, Seth, and Andrew executed the second amendment on January 1, 2011 (increasing Andrew's partnership interest to 20 percent), and the third amendment on January 1, 2013 (increasing Andrew's partnership interest to 45 percent). But things did not go well. By December 31, 2019, Andrew had stopped working for the family business, and Andy and Seth had decided to dissolve the partnership. Andy passed away some two months later, and Andrew learned that Andy and Karen had amended their estate planning documents to disinherit him.

D.      *First Amended Complaint, Trial, and Judgment*

Andrew commenced the instant action in July 2020. The operative first amended complaint asserts a single cause of action for breach of the previously described oral agreement and seeks the imposition of a constructive trust on the assets that were the subject of the alleged oral agreement. Those assets include the partnership and several parcels of real property.

The matter was tried to the trial court over the course of three days in August and September 2022. The trial court issued a statement of decision in February 2023. The trial court's statement of decision recounts the evidence described above and concludes that Andrew failed to establish the existence of the alleged oral agreement by clear and convincing evidence, as required by Probate Code section 21700. Accordingly, the trial court entered judgment for Karen.

4

*E.     Karen's Motion for Attorneys' Fees*

Karen moved for contractual attorneys' fees in April 2023. Relying on sections 1021 and 1033.5, Karen asserted she was entitled to attorneys' fees as costs in the amount of $415,030 pursuant to the attorneys' fee provision in the partnership agreement. Karen argued: "In order to effectively and successfully defend against [Andrew's] allegations of an oral contract to modify the written partnership agreement, it was necessary for the defense to interpret and enforce the written partnership agreement to rebut [Andrew's] allegations of detrimental reliance and to prevent any modifications to the agreement that were not in writing." (Emphasis omitted.)

The trial court issued a ruling on submitted matter in August 2023. The trial court explained: "While one of the claims in the complaint alleged a promise to give [Andrew] an interest in the partnership and partnership assets in a testamentary devise, no cause of action was brought for breach of the 2006 partnership agreement or any of its subsequent amendments. Deciding the case did not require the court to interpret or enforce said agreement or amendments." Furthermore, the trial court continued: "Even if [Andrew] prevailed on his cause of action, imposition of a constructive trust would still not require interpretation or enforcement of the 2006 partnership agreement or any of its subsequent amendments." Accordingly, the trial court denied the motion.

This appeal timely followed.

## II.  DISCUSSION

*A.     Applicable Legal Principles and Standard of Review*

"California generally follows what is commonly referred to as the 'American Rule,' which provides that each party to a lawsuit must ordinarily pay his or her own attorney fees." (*Tract 19051 Homeowners Assn. v. Kemp* (2015) 60 Cal.4th 1135, 1142; accord, *Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751 (*Mountain Air*).) This rule is codified as section 1021; however, that statute also "permits parties to ' "contract out" of the American rule' by executing an agreement that

5

allocates attorney fees."[2] (*Mountain Air, supra*, at p. 751 [" ' "[P]arties may validly agree that the prevailing party will be awarded attorney fees incurred in any litigation between themselves, whether such litigation sounds in tort or in contract" ' "].) Parties may also "limit the recovery of fees only to claims arising from certain transactions or events, or award them only on certain types of claims." (*Brown Bark III, L.P. v. Haver* (2013) 219 Cal.App.4th 809, 818.)

Two statutes are potentially relevant here: Civil Code section 1717 and section 1033.5. Civil Code section 1717 authorizes an award of attorney fees "[i]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party." (Civ. Code, § 1717, subd. (a).) The parties agree that Andrew's action was not "on a contract" within the meaning of Civil Code section 1717. They disagree as to whether Karen is entitled to attorneys' fees under section 1033.5, which specifies that costs recoverable under section 1032 include attorneys' fees when authorized by contract, statute, or law. (§ 1033.5, subd. (a)(10)(A)-(C).) No statutory basis for fees is presented here, other than that provided by section 1021. Accordingly, our analysis turns on the meaning of the attorneys' fee provision in the partnership agreement.

We apply traditional rules of contract interpretation to determine the scope of an attorneys' fee provision. (*Mountain Air, supra*, 3 Cal.5th at p. 752.) We consider the mutual intention of the parties, focusing first on the writing alone. (*Ibid.*) If the meaning of the relevant provisions is clear when interpreted in their ordinary and popular sense, we apply that meaning. (*Ibid.*) However, we also recognize the interpretational principle that the agreement must be understood with reference to the circumstances in which it

---

[2] Section 1021 provides, in pertinent part: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties."

6

was made and the matter to which it relates.  (*Ibid.*)  Because Karen's right to attorneys' fees depends on the interpretation of the partnership agreement, the facts are undisputed, and no extrinsic evidence has been offered to interpret the agreement, we review the trial court's ruling de novo.  (*Id.* at p. 751; *San Francisco CDC LLC v. Webcor Construction, L.P.* (2021) 62 Cal.App.5th 266, 285.)

B.      *Analysis*

As previously discussed, the attorneys' fee provision in the partnership agreement provides for the prevailing party to recover reasonable attorneys' fees as costs "[i]n the event suit is brought to enforce or interpret any part of this agreement."  Karen argues Andrew's action required the parties to "interpret" the partnership agreement, and thus falls within the attorneys' fee provision.  We disagree.

At the outset, we do not believe Andrew's action was "brought to enforce or interpret any part" of the partnership agreement.  The first amended complaint alleges breach of an oral agreement to devise certain assets and seeks the imposition of a constructive trust on those same assets.  True, those assets included Andy and Karen's partnership interests, which were established by the partnership agreement.  But that does not mean the action was brought to enforce or interpret the partnership agreement.  To illustrate that point, we observe the assets sought to be placed in the constructive trust also included various parcels of real property.  Andrew's action was not brought to enforce or interpret any agreement by which those parcels were acquired either.

Karen nevertheless insists the action required the trial court to "interpret" the partnership agreement to determine the parties' partnership interests.  She suggests the word "interpret" should be understood as synonymous with "consult," such that consulting the partnership agreement to determine Andrew's interest at various times was tantamount to "interpreting" it.  This is not the ordinary meaning of "interpret." To "interpret" something  means to "explain or tell the meaning of" that thing, or "understand and appreciate [it] in the light of individual belief, judgment, interest, or

7

circumstance." (Merriam-Webster's Unabridged Dict. Online (2025) <https://unabridged.merriam-webster.com/unabridged/interpret> [as of Oct. 24, 2025].) To "consult" something means to "consider" or "refer to" that thing. (*Id.* <https://unabridged.merriam-webster.com/unabridged/consult> [as of Oct. 24, 2025].) Andrew's action may have required the parties to "consult" the partnership agreement to factually ascertain their interests and see how they changed over time. But there was no controversy as to any party's percentage interest or change in interest, and thus no need to "interpret" or "explain . . . the meaning of" any part of the agreement. That the trial court considered the partnership agreement as evidence of the parties' percentage interests in the partnership at various times does not establish that the action was brought to "enforce or interpret" any part of the agreement.

Karen argues our understanding of the attorneys' fee provision renders the word "interpret" surplusage. It does not. An action brought to "interpret" the partnership agreement would be one seeking declaratory relief. (§ 1060 ["Any person interested . . . under a contract . . . may . . . bring an original action . . . in the superior court for a . . . determination of any question of construction or validity arising under the . . . contract"]; see also *Southern California Edison Co. v. Superior Court* (1995) 37 Cal.App.4th 839, 846 ["The interpretation of a contract is clearly a proper subject of declaratory relief"].) That's not what we have here. Whether Andrew was entitled to a constructive trust did not depend on the meaning of any particular provision of the partnership agreement, or whether the parties performed their obligations to one another as partners. Andrew's right to a constructive trust instead depended on whether he established the existence of the alleged oral agreement to devise property by clear and convincing evidence, which was not related to any contract interpretation issue concerning the partnership agreement.

Karen also argues Andrew's action required the trial court to interpret the partnership agreement to determine whether he reasonably and detrimentally relied on the alleged oral agreement to increase his partnership percentage from 20 percent to 49.5

percent over a period of years. According to Karen, Andrew could not have reasonably and detrimentally relied on any such promise because the partnership agreement required that changes to the partnership percentages be in writing, signed by the parties. The argument fails.

Probate Code section 21700, subdivision (a)(4) provides that a contract to make a will or devise can be established by "[c]lear and convincing evidence of an agreement between the decedent and the claimant or a promise by the decedent to the claimant that is enforceable in equity." Andrew attempted to establish the existence of an oral agreement to make a will, as to which he sought quasi-specific performance (i.e., a constructive trust). (See *Porporato v. Devincenzi* (1968) 261 Cal.App.2d 670, 674 ["The relief which may be granted in an action for quasi-specific performance of a contract to bequeath or devise property is the imposition of a constructive trust upon the property in favor of the promisee-plaintiff"].) He offered evidence the alleged agreement was supported by consideration; namely, his promise to return to the family farm in exchange for his parents' promise to make a will. (See Civ. Code, §§ 1550 [consideration is an essential element of a contract], 1605 [defining consideration as "[a]ny benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person"]; and see *Johnson v. Holmes Tuttle Lincoln-Mercury, Inc.* (1958) 160 Cal.App.2d 290, 295 ["Mutual promises constitute consideration"].) Reliance is not an element of a plaintiffs' action for quasi-specific performance of a contract to make a will. (*Porporato, supra*, at pp. 674-675.) It was therefore not necessary for the trial court to decide whether Andrew's reliance on the alleged oral agreement was reasonable in light of the partnership agreement.

Karen emphasizes that the first amended complaint refers to Andy's alleged promise to increase Andrew's partnership percentages over time and observes that detrimental reliance is an essential element of a cause of action for promissory estoppel.

9

Both of these things are true.  (See *Toscano v. Greene Music* (2004) 124 Cal.App.4th 685, 692 ["The elements of promissory estoppel are (1) a clear promise, reliance, (3) substantial detriment, and (4) damages 'measured by the extent of the obligation assumed and not performed' "].)  However, the first amended complaint does not assert a cause of action for promissory estoppel.  It only seeks quasi-specific performance of the alleged oral agreement to make a will.  As we have explained, detrimental reliance was not an element of that cause of action.  It follows that the trial court did not need to interpret the partnership agreement to determine whether Andrew detrimentally relied on Andy's alleged oral promise.

Applying our independent judgment, we conclude Andrew's action cannot reasonably be viewed as having been "brought to enforce or interpret any part" of the partnership agreement.  Neither the first amended complaint nor any cause of action alleges breach of the partnership agreement or any obligation in the partnership agreement.  The partnership agreement may have been relevant to any number of issues, including Karen's statute of fraud defense and the question whether Andy and Karen would have been likely to enter an oral agreement to make a will, but that does not mean Andrew's action was "brought to enforce or interpret any part" of the partnership agreement.  (See generally *Mountain Air, supra*, 3 Cal.5th at pp. 755-756 [assertion of an option agreement containing an attorneys' fee provision as an affirmative defense to an action to enforce a repurchase agreement not containing such a provision did not amount to "bringing an 'action' or 'proceeding' " to enforce the option agreement].)  The trial court properly denied Karen's motion for attorneys' fees.

## III.  DISPOSITION

The order denying appellant's motion for an award of attorneys' fees is affirmed.

Respondent is awarded his costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


/S/

_____

RENNER, J.


We concur:


/S/

_____

MAURO, Acting P. J.


/S/

_____

DUARTE, J.