Filed 10/20/21  Otay Land Co. v. UE Limited CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| OTAY LAND COMPANY, LLC, <br><br> Plaintiff, Cross-defendant, and Appellant, <br><br> v. <br><br> U.E. LIMITED LLC, <br><br> Defendant, Cross-complainant, and Respondent. | D077274 <br><br><br> (Super. Ct. No. 37-2013-00043371-CU-OR-CTL) |

APPEAL from an order of the Superior Court of San Diego County, John S. Meyer, Judge.  Affirmed.

Mintz Levin Cohn Ferris Glovsky & Popeo, Antony D. Nash and Nada I. Shamonki for Plaintiff, Cross-defendant and Appellant.

Law Office of Barbara S. Farley, Barbara S. Farley; Law Offices of Charles J. Wisch and Charles J. Wisch for Defendant, Cross-complainant and Respondent.

Following entry of judgment in its favor, appellant Otay Land Company, LLC (Otay Land) sought to recover its attorney fees pursuant to a provision contained in a contract referenced in both its complaint and the

cross-complaint of respondent U.E. Limited LLC (UE Limited). Otay Land asserted that because the claims alleged in UE Limited's cross-complaint arose from that agreement, it was entitled to an award of fees when it prevailed on those claims. The trial court disagreed, finding that there was no basis for an award of attorney fees because the action did not involve any contractual claims.

Otay Land challenges that ruling in this appeal. It relies heavily on UE Limited's own pretrial assertions that if it prevailed at trial, it would be entitled to attorney fees. Seeking reciprocity, Otay Land argues that Civil Code section 1717 provides a basis for awarding fees to Otay Land because it prevailed on UE Limited's claims.[1] Under our independent review, we conclude the trial court correctly found that Otay Land did not establish a right to recover its attorney fees. Section 1717 does not apply because the claims were not to enforce the purchase agreement and the language of the attorney fee provision, although broad, does not cover the claims brought by either Otay Land or UE Limited. Accordingly, we affirm the trial court's order denying Otay Land's motion for attorney fees.

FACTUAL AND PROCEDURAL BACKGROUND

In 1998, Otay Land purchased several large parcels of real property in a probate sale from the Estate of Mary Marshall Rand Birch Patrick. Among these parcels was a plot of land that the parties refer to as Lot 27, the subject of this action. The 1998 purchase agreement specifically excepted out a 100-foot-wide strip of land, referred to by the parties as the "Pipeline Strip," running through Lot 27. Otay Land alleged that after the purchase, it was "under a good faith belief" that the Pipeline Strip was part of Lot 27. Based

---

[1] All further statutory references are to the Civil Code unless otherwise stated.

2

on this belief, Otay Land occupied the Pipeline Strip and treated it as part of its own property for several years.

When Otay Land subsequently discovered that it did not own the Pipeline Strip, it filed this quiet title action asserting that it had obtained ownership of the land through adverse possession. In its complaint, Otay Land acknowledged that the 1998 purchase agreement specified that the Pipeline Strip was not included in the purchase of the surrounding parcels. Otay Land originally named other parties as the suspected owners of the Pipeline Strip, but amended its complaint in 2017 to add UE Limited as a defendant and purported owner of the property.

In its answer, UE Limited asserted an affirmative defense premised on Otay Land's alleged breach of the 1998 purchase agreement. UE Limited was not a party to that agreement but alleged that it was a successor, affiliate, or assigns of the Estate of Mary Marshall Rand Birch Patrick and that Otay Land's lawsuit against UE Limited was a breach of the written release contained in that agreement.

Subsequently, UE Limited filed its own cross-complaint, alleging causes of action for quiet title, declaratory relief, and seeking injunctive relief. The original cross-complaint did not include a prayer for attorney fees. In its operative second amended cross-complaint, UE Limited alleged that Otay Land misrepresented to permitting authorities that it owned the entirety of Lot 27, including the Pipeline Strip. In its prayer for relief, UE Limited sought a judgment quieting title in its favor, declaring all recent permits obtained by Otay Land to be revoked, and awarding it attorney fees incurred "in the defense and pursuit of these actions."

Otay Land moved to strike portions of UE Limited's operative cross-complaint, including the prayer for attorney fees. In its opposition to the

3

motion to strike, UE Limited asserted that its right to an award of attorney fees arose from the 1998 purchase agreement. UE Limited claimed it was a third-party beneficiary of that agreement and that its cross-complaint was an "action relating to enforcement or breach of the agreement" based on Otay Land's claim to ownership of the Pipeline Strip. The trial court denied the motion to strike, finding that "[h]aving identified a contract under which UE [Limited] claims it can recover attorney fees is enough to get by a motion to strike."

In its trial brief, UE Limited again claimed it was entitled to attorney fees as a third-party beneficiary of the 1998 purchase agreement. It asserted the agreement was at issue in this litigation because Otay Land was challenging the provision in that agreement that excepted the Pipeline Strip from the sale. UE Limited also argued that Otay Land "violated UE [Limited]'s rights" by making misrepresentations about ownership of the Pipeline Strip during the permitting process.

Following a bench trial, the court found in favor of Otay Land.[2] In its statement of decision, the court concluded that "Otay is determined to be the prevailing party against UE [Limited] as to all issues of fact and law presented by the parties" and that "Otay's request for allowable costs and attorneys' fees shall be addressed by way of appropriate post-trial procedures." The judgment quieted title in the portions of the Pipeline Strip previously owned by UE Limited in favor of Otay Land and determined that UE Limited "takes nothing by virtue of its cross-complaint." Mirroring the

_____

[2]    In a companion appeal arising from UE Limited's appeal of the judgment (*Otay Land Co. LLC v. U.E. Limited LLC* (Oct. 20, 2021, D076415) [nonpub. opn.]), we provide a more detailed discussion of the issues raised at trial and affirm the resulting judgment in favor of Otay Land.

statement of decision, the court entered a judgment stating that "Otay [Land] is the prevailing party in the action and is entitled to allowable costs and attorney's fees" in an amount to be determined and inserted by the clerk.

In a subsequent motion for attorney fees, Otay Land took the opposite position of its motion to strike to assert that this lawsuit did involve the 1998 purchase agreement such that it was entitled to an award of attorney fees as the prevailing party. The 1998 purchase agreement included an attorney fee provision, which stated: "If any legal action . . . is brought for the enforcement of this Agreement, or because of a breach, default, or misrepresentation in connection with this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees." Otay Land argued that this very broad attorney fee provision applies to this action because "[e]very iteration of UE [Limited]'s cross-complaint relies on, incorporates, and is intertwined with the 1998 Purchase Agreement."

UE Limited opposed the motion on the basis that both the complaint and cross-complaint did not involve the 1998 purchase agreement and that it would not have been entitled to recover attorney fees if it had prevailed as a nonsignatory plaintiff.

The trial court denied the motion for attorney fees. It found that UE Limited's cross-complaint did not allege an "action to enforce the purchase agreement, or for breach, default or misrepresentation made in connection with the purchase agreement. [¶] At most, there was a claim of misrepresentations made in connection with an element of adverse possession—the payment of taxes and UE [Limited]'s affirmative defense that Otay acted with unclean hands. [¶] Had UE [Limited] prevailed, UE [Limited] would have prevailed on the adverse possession claim and not on any contract claim. The alleged misrepresentations would have had no

5

impact on the purchase agreement. Accordingly, UE [Limited] would not have been entitled to attorney fees." In conclusion, the trial court noted that having tried the matter, it agreed with the argument made in Otay Land's earlier motion to strike the prayer for attorney fees that the lawsuit did not arise from any contract.

Otay Land appeals the order denying its post-judgment motion for attorney fees.

## DISCUSSION

Before addressing the merits, we address the parties' dispute regarding the applicable standard of review. Otay Land asserts the trial court's determination that there was no legal basis for an award of attorney fees is reviewed de novo. UE Limited disagrees in part, contending that the trial court's order denying the motion for attorney fees also reconsidered the earlier order denying Otay Land's motion to strike and entered a new order granting that motion to strike. UE Limited contends this portion of the order is reviewed for an abuse of discretion.

We disagree with UE Limited's interpretation of the trial court's order. The trial court did not enter a postjudgment order striking a portion of UE Limited's cross-complaint. Instead, in the course of considering and denying the motion for attorney fees, the trial court simply expressed an agreement with an argument made in Otay Land's motion to strike. The court was merely considering a prior argument, not revisiting and reconsidering its ruling on the motion to strike. (Cf. *Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1097 [discussing "a *court's* ability to reconsider its previous interim orders on its own motion, *as long as it gives the parties notice* that it may do so and a reasonable opportunity to litigate the question"], second italics added.)

6

Thus, the only ruling we are reviewing is the trial court's order denying Otay Land's motion for attorney fees on the basis that Otay Land was not legally entitled to a fee award. " ' "On review of an award of attorney fees after trial, the normal standard of review is abuse of discretion. However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law." ' [Citations.] In other words, 'it is a discretionary trial court decision on the propriety or amount of statutory attorney fees to be awarded, but a determination of the legal basis for an attorney fee award is a question of law to be reviewed de novo.' [Citations.] In this case, where the material facts are largely not in dispute, our review is de novo." (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751 (*Mountain Air*).)

As both parties recognize, a party may generally recover attorney fees only in certain narrow circumstances. Codifying what is commonly known as the American rule, section 1021 of the Code of Civil Procedure provides: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties." Thus, while each party to a lawsuit ordinarily pays its own attorney fees, the parties may agree to a different rule for payment of fees. "In other words, section 1021 permits parties to ' "contract out" of the American rule' by executing an agreement that allocates attorney fees. [Citations.] Thus, ' "[p]arties may validly agree that the prevailing party will be awarded attorney fees incurred in any litigation between themselves, whether such litigation sounds in tort or in contract." ' " (*Mountain Air*, *supra*, 3 Cal.5th at p. 751.)

7

If such an agreement exists, section 1717 creates certain statutory restrictions and protections that apply regardless of the specific language of the agreement when there is an "action on a contract" and the fees are incurred "to enforce that contract." (*Id.*, subd. (a);[3] see also *Santisas v. Goodin* (1998) 17 Cal.4th 599, 614-615 (*Santisas*).) "Section 1717 and its reciprocity principles, however, have 'limited application. [They] cover[] *only* contract actions, where the theory of the case is breach of contract, and where the contract sued upon itself specifically provides for an award of attorney fees incurred to enforce *that* contract.' " (*Brown Bark III, L.P. v. Haver* (2013) 219 Cal.App.4th 809, 820 (*Brown Bark*).) "Tort and other noncontract claims are not subject to section 1717 and its reciprocity principles." (*Ibid.*)

On appeal, Otay Land relies heavily on Civil Code section 1717 to support its claim to fees. However, Otay Land's assumption that Civil Code section 1717 is the operative statutory provision overlooks the significance of Code of Civil Procedure section 1021. (*Maynard v. BTI Group, Inc.* (2013) 216 Cal.App.4th 984, 989.) Before determining whether Civil Code section 1717 applies, a court considering a motion for attorney fees must first determine whether the parties entered into an agreement providing for the payment of attorney fees and, if so, the scope of the attorney fee provision. (*Mountain Air*, *supra*, 3 Cal.5th at p. 752; *Maynard*, at p. 990.) "This

---

3      Section 1717 provides, in pertinent part: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." (§ 1717, subd. (a).)

8

determination requires us to apply traditional rules of contract interpretation." (*Mountain Air*, at p. 752.)

Although Civil Code section 1717 does not apply to tort or other noncontract claims, an attorney fee provision, depending on its wording, "may afford the defendant a contractual right, not affected by [Civil Code] section 1717, to recover attorney fees incurred in litigating those causes of action." (*Santisas*, *supra*, 17 Cal.4th at pp. 617-618.) A broader fee provision may also allow recovery of attorney fees by nonsignatories and support an award of attorney fees under Code of Civil Procedure section 1021 regardless of the inapplicability of Civil Code section 1717. (*Thompson v. Miller* (2003) 112 Cal.App.4th 327, 336-337.) Thus, before considering Otay Land's claim arising under Civil Code section 1717, we consider the plain language of the attorney fee provision found in the 1998 purchase agreement.

In *Mountain Air*, *supra*, 3 Cal.5th 744, the California Supreme Court considered the scope of an attorney fee provision similar to the attorney fee provision in this case. The provision at issue in *Mountain Air* permitted the recovery of fees if " 'any legal action or any other proceeding, including arbitration or an action for declaratory relief[,] is brought for the enforcement of this Agreement or because of an alleged dispute, breach, default, or misrepresentation in connection with any provision of this Agreement.' " (*Id.* at p. 757, italics omitted.)

As relevant to this action, our Supreme Court interpreted the meaning of the relevant phrases " 'because of' " and " 'in connection with.' " (*Mountain Air*, *supra*, 3 Cal.5th at pp. 757-758.) *Mountain Air* explained that " ' "Because of" is a term in common usage. It connotes a causal link.' " (*Id.* at p. 757.) "[T]he term 'in connection with' is broad, and has been interpreted

9

to extend to both contract and tort claims in a contractual attorney fees provision." (*Ibid.*)

Here, the attorney fee provision uses many of the same terms as the provision at issue in *Mountain Air*. The 1998 purchase agreement contains an attorney fee provision that provides: "If any legal action or any arbitration or other proceeding is brought for the enforcement of this Agreement, or because of a breach, default, or misrepresentation in connection with this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees."

Although it is undisputedly a "legal action," Otay Land's quiet title complaint was not brought on the contract and Otay Land does not rely on its own complaint to support its right to recover fees. Otay Land references UE Limited's answer to the complaint, which included an affirmative defense alleging that Otay Land breached the purchase agreement. But our Supreme Court has clarified that the word "action," as used in a contractual attorney fee provision, does *not* include the assertion of an affirmative defense. (*Mountain Air*, *supra*, 3 Cal.5th at pp. 755-756.) Thus, UE Limited's affirmative defense, standing alone, is insufficient to trigger the attorney fee provision. (*Ibid.*)

Otay Land chiefly relies on UE Limited's cross-complaint to support its claim to fees. The parties do not dispute that UE Limited's cross-complaint is a "legal action" or that Otay Land was the "prevailing party." Thus, the issue to be determined is whether the cross-complaint was "brought for the enforcement" of the 1998 purchase agreement or "because of a breach, default, or misrepresentation in connection with this Agreement."

The cross-complaint does not seek to enforce the purchase agreement or allege a breach of that agreement. Similarly, it does not allege a default of

the agreement. Accordingly, the only remaining basis for Otay Land's entitlement to attorney fees is if the cross-complaint was "brought . . . because of a . . . misrepresentation in connection with this Agreement."

The cross-complaint includes allegations of misrepresentations made by Otay Land to the City of Chula Vista and other permitting authorities regarding Otay Land's ownership of the Pipeline Strip. Although these allegations are found throughout the cross-complaint, all are related to UE Limited's allegation that Otay Land "fraudulently misrepresented to third parties and government agencies that they own UE [Limited]'s property and have falsely planned their development over property owned by UE [Limited]."

Even assuming the alleged misrepresentations were in connection with the 1998 purchase agreement, the record does not establish that UE Limited's cross-complaint was brought "because of" those alleged misrepresentations.[4] "Our high court has observed that the phrase ' "because of" ' in attorney fee clauses can imply various ' "degree[s] of causation," ' including ' "but-for" ' cause, ' "substantial factor," ' and ' "motivating factor." ' " (*San Francisco CDC LLC v. Webcor Construction L.P.* (2021) 62 Cal.App.5th 266, 287.) Although UE Limited includes allegations of misrepresentations in its cross-complaint, the trial court

---

[4]     The phrase "in connection with" is broad and includes tort claims. (*Mountain Air, supra*, 3 Cal.5th at pp. 757-758.) However, we need not consider whether Otay Land's alleged misrepresentations regarding ownership of the Pipeline Strip were made *in connection with* the 1998 purchase agreement—namely, on the grounds that any claim to title that existed before Otay Land asserted an adverse possession claim would have arisen from that agreement—given our conclusion that Otay Land's claims were not brought *because of* those alleged misrepresentations.

11

correctly noted that those allegations were not a central element of any claim raised by UE Limited. The court explained that "[a]t most, there was a claim of misrepresentations made in connection with an element of adverse possession—the payment of taxes and UE [Limited]'s affirmative defense that Otay [Land] acted with unclean hands." As stated by UE Limited itself in the cross-complaint, it was raising the allegations of misrepresentations to establish that "[t]he fraudulent conduct of Otay Land . . . precludes them from obtaining an advantage over UE [Limited]'s Property and precludes usurping UE [Limited]'s ownership interest." As the trial court correctly noted, UE Limited's allegations regarding misrepresentations are not the basis for an independent cause of action in the cross-complaint, but rather appear to be asserted in defense to Otay Land's claim for adverse possession. (See, e.g., *Fibreboard Paper Products Corp. v. East Bay Union of Machinists* (1964) 227 Cal.App.2d 675, 727 [discussing defense of unclean hands].) Thus, UE Limited did not file its cross-complaint because of Otay Land's alleged misrepresentations, but rather because of Otay Land's claim that it had adversely possessed the Pipeline Strip. UE Limited's causes of action would have been substantively identical even if the allegations regarding the misrepresentations had been omitted from the cross-complaint.

Although we consider the claims as pleaded when determining whether an action falls within the scope of an attorney fee provision, UE Limited's focus at trial is further evidence that the misrepresentations were not a central element of its claims. As Otay Land acknowledges, and as recognized by the trial court, UE Limited substantially abandoned any claims in connection with these misrepresentations or other matters related to the 1998 purchase agreement at trial as it relates to Lot 27. Instead, the purchase agreement was not disputed at trial. The court emphasized that

12

the purchase agreement has "never, ever, ever, been in dispute. . . . [T]he entire dispute between the parties involved a claim of adverse possession over a [discrete] area of the property that was purchased, and that's it. . . . [T]he fact that the land was acquired by a contract is totally, completely irrelevant to the dispute."[5] The record confirms that, as the trial court concluded, the misrepresentation allegations had no bearing on the action such that if they were excluded from the cross-complaint, it would have had no effect on the prayer for relief or UE Limited's presentation of evidence to support its claims. Thus, there is no causal link between the alleged misrepresentations and the filing of UE Limited's cross-complaint.[6]

We therefore conclude the trial court correctly found that Otay Land was not entitled to recover its attorney fees where it failed to establish that UE Limited's cross-complaint was "brought for the enforcement" of the 1998

---

[5] In response to the trial court's conclusion that the evidence at trial "had nothing to do with" the 1998 purchase agreement, Otay Land agreed stating, "[t]hat's the evidence that came out at trial." However, Otay Land objects to the trial court relying on "the benefit of hindsight" by referring to the evidence presented at trial. Although the pleadings are critical, we reject Otay Land's contention that the trial court, and by extension this court, is precluded from considering the evidence presented at trial and the arguments of counsel to assist in determining whether the action falls within the scope of the attorney fee provision. (See *Mountain Air*, *supra*, 3 Cal.5th at pp. 760-761 [in determining whether moving party was entitled to attorney fees, the court " 'should consider the pleaded theories of recovery, the theories asserted and the evidence produced at trial, if any, and also any additional evidence submitted on the motion in order to identify the legal basis of the prevailing party's recovery' "].)

[6] Because we conclude that the attorney fee provision does not apply to UE Limited's cross-complaint, it is unnecessary for us to determine whether UE Limited, as a nonsignatory, could have recovered its fees under that provision had it prevailed.

13

purchase agreement or "because of a breach, default, or misrepresentation in connection with this Agreement." As the trial court explained, the claims raised by both parties did not arise from the purchase agreement, did not seek to enforce it, and bore no relation to any dispute over that agreement.

Otay Land's reliance on section 1717 does not change our analysis. Relying on section 1717's narrower application, Otay Land contends that section applies because the case was an "action on a contract." (§ 1717, subd. (a).) In opposition, UE Limited focuses on the absence of a breach of contract cause of action to assert that its cross-complaint was not an action "on a contract." However, as Otay Land notes, section 1717 may be invoked even without a breach of contract cause of action so long as the claim is seeking to enforce the contract or otherwise is premised on a breach of a promise in connection with the agreement containing the attorney fee provision. (See, e.g., *Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1602; *Hyduke's Valley Motors v. Lobel Financial Corp.* (2010) 189 Cal.App.4th 430, 435-436.) Section 1717 refers to an award of fees incurred to "enforce the contract" such that it applies when a party is seeking to enforce the terms of the contract at issue. (*Exxess Electronixx v. Heger Realty Corp.* (1998) 64 Cal.App.4th 698, 709.)

As we have already discussed, UE Limited's cross-complaint repeatedly refers to the 1998 purchase agreement, but nothing in that pleading seeks to enforce that agreement or is premised on an alleged breach of a promise in that agreement. Otay Land admitted in its complaint that the purchase agreement did *not* include the Pipeline Strip or otherwise create any right to that parcel of land. Rather than claiming that it purchased the Pipeline Strip in the 1998 purchase agreement, Otay Land claimed that it acquired title to UE Limited's land through adverse possession. Neither party

14

identifies any other allegation of any breach of any promise made in connection with the 1998 purchase agreement and the complaint and cross-complaint do not attempt to enforce any provision of that agreement.[7] Thus, the 1998 purchase agreement does not form the basis for any cause of action in the cross-complaint.

Even though *both* parties have changed their positions on whether attorney fees are recoverable in this case,[8] Otay Land contends *UE Limited* should be judicially estopped from arguing that the 1998 purchase agreement does not authorize the recovery of attorney fees. As Otay Land asserts, UE Limited repeatedly argued before trial that it would be entitled to attorney fees if it prevailed at trial. However, as this court held in *R.W.L. Enterprises v. Oldcastle, Inc.* (2017) 17 Cal.App.5th 1019, 1035-1036, "a party's mere assertion of the right to recover fees does not estop it from challenging a fee award or vest the other party with the right to recoup attorney fees if it prevails." It is well established judicial estoppel does not apply against a losing party that sought attorney fees if that party would not have been legally entitled to such fees had it prevailed. (*M. Perez Co., Inc. v. Base Camp*

[7]     As mentioned *ante*, UE Limited's answer alleged an affirmative defense claiming Otay Land's complaint was a breach of the agreement, which included a release of all claims related to the purchase. In a prior opinion filed the same month as UE Limited's answer in this action, this court held in a different lawsuit that UE Limited was not protected by the release provision in the 1998 purchase agreement. (*Otay Land Co., LLC v. U.E. Limited, L.P.* (2017) 15 Cal.App.5th 806, 852-861.) Following the issuance of this ruling, UE Limited abandoned this claim. It was not included in Otay Land's subsequent operative cross-complaint, and was not raised at trial or in the trial court's statement of decision.

[8]     In the trial court, Otay Land argued that there was no right to attorney fees based on the 1998 Purchase Agreement and sought to strike UE Limited's prayer for relief seeking such fees.

*Condominiums Assn. No. One* (2003) 111 Cal.App.4th 456, 470; *Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, 897-899 & fn. 12.)

We see no basis for concluding that if UE Limited had prevailed on its cross-complaint, it would have been legally entitled to recover its fees. As a nonsignatory, UE Limited was not seeking to enforce the agreement or to assert any right it possessed as a purported third-party beneficiary under that agreement. The mere references to the agreement in the cross-complaint are not sufficient to establish that the claims were brought on the contract. As such, the reciprocity principles that arise under section 1717, and as discussed in *Brown Bark, supra*, 219 Cal.App.4th 809, the main authority relied upon by Otay Land, have no application in this action.

In sum, Otay Land has failed to establish any basis for an award of attorney fees. The trial court correctly interpreted and applied the contractual fee provision in the 1998 purchase agreement, and it did not err in denying Otay Land's motion for attorney fees.

16

## DISPOSITION

The order is affirmed.  UE Limited is entitled to its costs on appeal.


GUERRERO, J.

WE CONCUR:


O'ROURKE, Acting P. J.


DO, J.

17