Filed 8/20/24  Preservation, Finance etc. v. Associated Financial Corp. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| PRESERVATION, FINANCE, REHABILITATION & DEVELOPMENT, LP, | B325694 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. SC124545) |
| v. | |
| ASSOCIATED FINANCIAL CORPORATION, et al., | MODIFICATION ORDER |
| Defendants and Respondents. | [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on August 13, 2024, be modified as follows:

On page 2, the name of Respondent's counsel, "Andrea" should be removed and replaced with "Andrew" as the correct first name.

There is no change in the judgment.

---

CURREY, P.J.          COLLINS, J.          ZUKIN, J.

Filed 8/13/24  Preservation, Finance etc. v. Associated Financial Corp. CA2/4 (unmodified opinion)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| PRESERVATION, FINANCE, REHABILITATION & DEVELOPMENT, LP,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>ASSOCIATED FINANCIAL CORPORATION, et al.,<br><br>Defendants and Respondents. | B325694<br><br>(Los Angeles County Super. Ct. No. SC124545) |

APPEAL from an order of the Superior Court of Los Angeles County, Harry Jay Ford, III, Nancy L. Newman, Judges.  Affirmed.

Resch, Polster & Berger, Robert W. Barnes, Sandra Khalili, Stacey N. Knox; Greines, Martin, Stein & Richland, Jeffrey E. Raskin, Rachel A. Beyda for Plaintiff and Appellant.

Jeffer Mangels Butler & Mitchell, Robert E. Mangels, Andrea I. Shadoff for Defendants and Respondents.

---

### INTRODUCTION

Plaintiff Preservation, Finance, Rehabilitation & Development, LP (PFRD) appeals from an award of attorney fees in favor of defendants Associated Financial Corporation and its affiliate, Management Assistance Group, Inc. (collectively, AFC).[1] In 2001, the parties entered into a complex loan transaction using a set of loan documents that included an option agreement. PFRD claims that the parties modified their agreement the following year, under an oral contract termed the 50/50 agreement. PFRD sued AFC, alleging breach of the 50/50 agreement. Following a bench trial, the trial court found that PFRD failed to establish the existence or terms of the 50/50 agreement and entered judgment in favor of AFC.

AFC successfully moved for attorney fees as the prevailing party, based on an attorney fee provision in the option agreement. On appeal, PFRD argues that its lawsuit alleged only a breach of the 50/50 agreement and therefore the attorney fee provision of a different contract—the option agreement—does not apply. We agree with the trial court that it was necessary to construe the provisions and rights of the parties under the option agreement in order to adjudicate PFRD's claims, thus triggering

---

[1] We exclude from our discussion other related entities not relevant to this appeal.

the attorney fee provision.  We therefore affirm the order awarding attorney fees to AFC.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     The Loan Agreement

The parties are in the business of investing in and/or managing low-income, multifamily housing projects.  The United States government filed civil and criminal litigation against AFC alleging that AFC received monetary kickbacks and engaged in other misconduct related to some of its housing projects. In 2001, AFC entered into a consent judgment with the United States Department of Justice (DOJ) and Department of Housing and Urban Development (HUD), agreeing to pay over $10 million between 2001 and 2004.  The consent judgment also required AFC to divest its ownership interests in a number of properties it managed.

AFC approached PFRD for a loan to cover the money due under the consent judgment. The parties thereafter entered into an agreement set forth in a set of deal documents, drafted by AFC and signed by the parties in March 2001.  The deal documents included a secured loan agreement, a promissory note, a collateral assignment and security agreement, and an option agreement.  Under the loan agreement, PFRD agreed to lend AFC up to $10,760,000, to be paid to the government in a series of 12 payments between March 2001 and April 2004.  The loan agreement also contained an express clause prohibiting any modification except by written agreement.  The note provided that AFC would repay the loan within four years at a specified interest rate.  Under the collateral assignment and security agreement, the loan was secured by specified collateral including

AFC's interest in a group of 76 housing projects (the housing projects).

The final document, the option agreement, granted PFRD the option to acquire the loan collateral at any time under the terms specified in the option agreement, in lieu of repayment of the loan. The option agreement contained an attorney fee provision in paragraph 9.12, awarding a prevailing party the ability to recover fees incurred in "any action . . . to enforce or construe any provisions or rights under this Agreement."

## II.    PFRD's Lawsuit

### A.    Complaint

In 2015, PFRD filed a complaint against AFC alleging claims for breach of contract, breach of fiduciary duty, constructive fraud, conversion, promissory estoppel, accounting, breach of promissory note, common count—money paid, common count—money lent, and declaratory relief. PFRD alleged that the parties executed the deal documents in 2001 and PFRD made payments to the DOJ as agreed between March 2001 and October 2002. However, with respect to repayment of the loan, PFRD claimed that the parties' agreement and conduct differed from the written deal documents. Specifically, PFRD alleged that, as reflected in letters sent by PFRD after execution of the deal documents, the parties had agreed that PFRD would immediately acquire the right to own AFC's interests in the housing projects, including proceeds from the sale of any of those properties.

According to PFRD, in December 2002, the parties' principals met and entered into an oral agreement (the 50/50 agreement) that reflected their actual understanding and therefore altered the prior agreement. PFRD alleged that under this oral agreement, it "agreed to accept performance which was

4

different than the performance to which [PFRD] was entitled under the Loan Documents." The 50/50 agreement provided that after the December 2002 payment, PFRD would pay half of the amount owed in each installment to the DOJ, while AFC would pay the other half. Similarly, the parties would share equally in any future proceeds from the sale or refinancing of the housing projects. PFRD further alleged that AFC's "obligations under the Note is [*sic*] not extinguished until performance under the 50/50 Agreement is completed and their respective obligations thereunder have been satisfied."

PFRD alleged that it performed in accordance with the terms of the 50/50 agreement by making payments to the DOJ from December 2002 to April 2004. PFRD also alleged that it paid AFC half of the proceeds from any transactions involving housing projects controlled by PFRD. On the other hand, for housing projects controlled by AFC, PFRD alleged that AFC failed to pay PFRD half of any proceeds from related transactions. PFRD therefore alleged that it "is now informed and believes that it is owned significantly more in connection with these transactions."

PFRD therefore alleged that AFC breached the 50/50 agreement by failing to make the required payments to PFRD. However, in the event the court "does not find the 50/50 Agreement to be an enforceable contract . . . [PFRD] alleges, in the alternative, that [defendants] are indebted to [PFRD] in an amount not less than $8,604,774 plus accrued interest thereon at the rate required under the Note, as a result of money paid on [AFC's] behalf." PFRD also sought a judicial determination of the respective rights, duties, and obligations of the parties "with respect to the 76 Properties, the Note, and the 50/50 Agreement."

PFRD attached a copy of the promissory note as an exhibit to the complaint, as well as letters between the parties purportedly reflecting their understanding of their agreement.

### B. Statement of Decision

The matter proceeded to bench trial in April 2021.[2] In its post-trial brief, PFRD argued that it had presented evidence that the parties initially performed under the written deal documents, "as clarified" by subsequent letters. The parties then entered into the oral 50/50 agreement in December 2002 to formally alter the terms of their agreement, as reflected by the parties' conduct in conformity (at least partially) with the new agreement. However, AFC breached the 50/50 agreement by failing to pay PFRD its 50 percent share of the proceeds from the sale or refinancing of any of the housing projects. In AFC's post-trial brief, AFC argued that it had repaid the loan as agreed pursuant to the deal documents, there was no evidence of an oral agreement, and the deal documents expressly prohibited oral modifications.

The trial court issued a written statement of decision in March 2022. The court noted that at the conclusion of the trial, PFRD had asked the court not to rule on its claims for conversion, breach of promissory note, common count—money paid, and common count—money lent (fourth, seventh, eighth, and ninth causes of action). The court found that PFRD had abandoned these claims and dismissed them with prejudice.

The court then found in favor of AFC and against PFRD on the remaining claims. Specifically, the court found that PFRD's purported understanding of the terms of the deal as reflected in letters exchanged after the deal documents were signed had no

---

[2]    The trial proceedings are not part of the record on appeal.

6

legal effect, as the letters conflicted with the terms of the deal documents. The court rejected the testimony of PFRD's principal claiming that the supplemental letters "clarified" the deal and established that PFRD "acquired a vested unconditional right to receive all of the 'net proceeds,' if any, from all of [AFC's] interests in the 76 properties in exchange for PFRD's commitment to fund the Consent Judgment." The court found that this testimony was inconsistent with the terms of the option agreement, which set forth specified conditions for PFRD to exercise the option to acquire AFC's interest in the housing projects. The court also noted that in closing argument, PFRD argued that it "performed under the Option Agreement and exercised the option to acquire" the housing projects. But the court concluded that PFRD failed to prove that it exercised the option under the option agreement to acquire or pay for all of AFC's interests in the housing projects. As such, the court found that PFRD had not produced sufficient evidence of "a definitive oral agreement encompassing all 76 properties" and therefore that PFRD could not establish its claims under the 50/50 agreement.

## C. Motion for Attorney Fees

In May 2022, AFC filed a motion for reasonable attorney fees pursuant to Civil Code section 1717 (section 1717) and Code of Civil Procedure sections 1032 and 1033.5.[3] AFC relied on the

---

[3] Section 1717 provides for an award of attorney fees in "any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party." Code of Civil Procedure sections 1032 and

attorney fee provision in the option agreement, which allowed recovery of attorney fees by the prevailing party in "any action . . . to enforce or construe any provisions or rights under this Agreement." AFC contended that PFRD filed its lawsuit "for, among other things, breach of an alleged oral agreement that arose out of and was premised on the provisions and rights set forth in the Option Agreement." AFC asserted that the foundation for the purported 50/50 agreement was "PFRD's claim that it had exercised its option under the parties' pre-existing, written Option Agreement and thus had acquired the 'unconditional right' to 100% of the proceeds of all of the 76 properties identified in the schedules attached to the Option Agreement." PFRD then claimed it agreed to give back half of those interests to AFC as consideration for the 50/50 agreement. AFC sought $1,414,748 in attorney fees as the prevailing party to the lawsuit.

In opposition, PFRD argued that the attorney fee clause in the option agreement was narrowly drafted and did not apply to PFRD's claims. PFRD asserted that its lawsuit was premised only on the 50/50 agreement and did not seek to "enforce or construe the Option Agreement or seek damages for its breach."

At the court's request, the parties provided supplemental briefing regarding the availability of attorney fees under section 1717 and Code of Civil Procedure section 1033.5. In its supplemental brief, AFC argued that the court could award fees under section 1717 because "the Court was required to construe provisions or rights under the Option Agreement to adjudicate PFRD's claims based on the alleged subsequent 50/50 deal." AFC

_____

1033.5 set forth the right of a prevailing party to recover costs, including attorney fees, where authorized by contract or statute.

8

also contended that the court could award fees pursuant to Code of Civil Procedure section 1033.5 because "PFRD has asserted multiple tort claims based on the 50/50 deal." PFRD also filed a supplemental brief, disputing that its claims required the court to construe the option agreement and arguing that the attorney fee provision was not a broad provision covering all claims "arising out of" or "in connection with" that agreement. PFRD also argued that neither statute provided a basis for an award of attorney fees to either party.

The court issued a written ruling granting the motion. The court acknowledged that the complaint "asserted causes of action to enforce the 50/50 Deal, not the Option Agreement." However, the court found that PFRD's claims seeking to enforce the 50/50 agreement "necessarily required the Court to 'construe' the Option Agreement," thus triggering the latter agreement's attorney fee provision. Specifically, the court found that "[c]onstruction of the Option Agreement's terms was essential in determining whether [PFRD] performed under the Option Agreement" and therefore whether PFRD had exercised its option to acquire the interest in the properties that it then purported to return as consideration for the 50/50 agreement. The court also found that the attorney fee provision was "broad enough to encompass any actions to enforce or construe any provisions or rights under the Option Agreement, including tort claims," thus allowing recovery pursuant to section 1033.5. The court awarded AFC $1,371,017 in attorney fees.[4]

---

[4] The court reduced the amount by the fees incurred in litigating AFC's cross-complaint. PFRD does not challenge the amount awarded on appeal.

9

The court entered an amended judgment including the award of attorney fees on October 31, 2022. PFRD timely appealed.

## DISCUSSION

PFRD contends the trial court erred in granting AFC's motion for attorney fees. It challenges the court's conclusion that the attorney fee provision in the option agreement encompassed PFRD's claims in the instant lawsuit. PFRD argues that the fee provision was narrowly worded and did not cover the lawsuit PFRD filed to enforce the 50/50 agreement. We agree with the trial court and therefore affirm.

## I.    Legal Standards

"Each party to a lawsuit must pay his or her own attorney fees except where a statute or contract provides otherwise." (*Cargill, Inc. v. Souza* (2011) 201 Cal.App.4th 962, 966 (*Cargill*).) Attorney fees authorized by contract are recoverable as costs by the party prevailing in the action. (Code Civ. Proc., §§ 1032, subd. (b), 1033.5, subd. (a)(10)(A); see also *Scott Co. v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1109 (*Scott*); *Santisas v. Goodin* (1998) 17 Cal.4th 599, 608 (*Santisas*) ["'[p]arties may validly agree [by contract] that the prevailing party will be awarded attorney fees incurred in any litigation between themselves, whether such litigation sounds in tort or in contract.'"]).)

In analyzing a request for contractual attorney fees, the court must "'determine whether the parties entered an agreement for the payment of attorney fees, and if so, the scope of the attorney fee agreement.' [Citation.] This determination requires us to apply traditional rules of contract interpretation." (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 752 (*Mountain Air*), citing *Santisas, supra,*

10

17 Cal.4th at p. 608.) "Accordingly, we first consider the mutual intention of the parties at the time the contract providing for attorney fees was formed. (Civ. Code, § 1636.) Our initial inquiry is confined to the writing alone." (*Mountain Air*, *supra*, 3 Cal.5th at p. 752.) Unless the parties employed terms with a technical or special meaning, contract terms are interpreted according to their clear and explicit meaning in light of their ordinary and popular sense. (*Ibid*.) In other words, "'if the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning.'" (*Ibid*.) Further, "'a contract must be understood with reference to the circumstances under which it was made and the matter to which it relates.'" (*Ibid*.)

On appeal, "a determination of the legal basis for an attorney fee award is a question of law to be reviewed de novo." (*Mountain Air, supra,* 3 Cal.5th at p. 751; see also *Cullen v. Corwin* (2012) 206 Cal.App.4th 1074, 1078; *Cargill, supra*, 201 Cal.App.4th at p. 966.) We interpret a contract de novo if the interpretation does not turn on the credibility of extrinsic evidence. (*City of Manhattan Beach v. Superior Court* (1996) 13 Cal.4th 232, 238; *Kalai v. Gray* (2003) 109 Cal.App.4th 768, 777.) However, to the extent the trial court resolved a disputed factual issue, we determine whether substantial evidence supports the court's findings. (*Cullen v. Corwin, supra*, 206 Cal.App.4th at p. 1078; *Carpenter & Zuckerman, LLP v. Cohen* (2011) 195 Cal.App.4th 373, 378.)

## II.    Analysis

PFRD's central contention on appeal is that the plain meaning of the option agreement's attorney fee provision applies only to actions "'to enforce or construe' the Option Agreement." Because PFRD's action sought to enforce the 50/50 agreement,

11

not the option agreement, PFRD reasons that the attorney fee provision does not apply.  We disagree.

We find *Mountain Air* instructive.  There, the parties entered into a repurchase agreement and then subsequently into an option agreement regarding rights to certain real estate. The plaintiff seller sued, alleging that the defendant buyers had breached the repurchase agreement.  In response, the defendant asserted as an affirmative defense that the option agreement was a novation that extinguished the repurchase agreement. (*Mountain Air, supra,* 3 Cal.5th at pp. 748-749.)  After a bench trial, the trial court entered judgment in favor of the defendants. The court found the repurchase agreement was void and unenforceable. The court also concluded that the option agreement was a novation and extinguished the defendants' obligations under the repurchase agreement.  (*Id*. at p. 749.)  The defendants moved for attorney fees under both agreements.  The trial court denied the motion.  (*Ibid*.)

The central issue on appeal was the applicability of the fee provision in the option agreement, which allowed fees for "any legal action or any other proceeding . . . brought for the enforcement of this Agreement or because of an alleged dispute, breach, default, or misrepresentation in connection with any provision of this Agreement."  The Supreme Court concluded that the defendants' assertion of an affirmative defense could not trigger the fee provision, as it did not qualify as "bringing" a "legal action" or other "proceeding" within the meaning of the provision.  (*Mountain Air, supra,* 3 Cal.5th at pp. 752-753.) However, the court found that the defendants could recover attorney fees under the second clause of the provision, which allowed fees in an action brought "because of an alleged dispute,

breach, default, or misrepresentation in connection with any provision of this Agreement." The court recognized that the plaintiff's lawsuit for specific performance of the repurchase agreement was not "'brought for the enforcement'" of the option agreement, but found that the salient issue was "whether Mountain Air's action on the *repurchase agreement* was 'brought . . . because of an alleged dispute . . . in connection with any provision of' the *option agreement*." (*Id*. at p. 757.) Both agreements concerned "the transfer of the same property between the same parties, but provided alternate and conflicting versions of the parties' rights and responsibilities." (*Id*. at p. 758, footnote omitted.) Thus, the court concluded that the action "involved 'an alleged dispute . . . in connection with' the option agreement, as required under that attorney fees provision." (*Ibid*.)

The Supreme Court also found that the lawsuit satisfied the requirement that the plaintiff bring its action "because of" that dispute in connection with the option agreement. The operative complaint "focused on the repurchase agreement . . . and did not otherwise reference the option agreement," and the plaintiff argued that "the enforcement or interpretation of the option agreement was not the declared *purpose* of its lawsuit." (*Mountain Air, supra,* 3 Cal.5th at p. 758.) The court nevertheless found that "[o]nce Mountain Air filed suit to compel defendants to repurchase the South Tower, the action necessarily implicated the validity of *both* the repurchase agreement and the option agreement." (*Ibid*.) Thus, the parties had to litigate which agreement controlled their rights, and the action to enforce the repurchase agreement "was brought 'because of an alleged dispute . . . in connection with' the option agreement." (*Id*. at p. 759.) Indeed, the court noted that "as a practical matter, it is

13

unclear how a court could determine the parties' obligations in this purchase transaction without construing these inherently conflicting agreements together." (*Ibid.*)

Similarly, here, the parties and the trial court agreed that PFRD's lawsuit was not an action to enforce the option agreement. Thus, if the attorney fee provision applied only to such actions, it would not trigger AFC's right to attorney fees. The parties certainly could have drafted the agreement in that narrow fashion. (See *Khan v. Shim* (2016) 7 Cal.App.5th 49, 60 [citing examples of narrow provisions and finding that the parties chose broader language].) However, the fee provision here includes additional language, allowing fees for "any action...to enforce *or construe any provisions or rights* under [the Option] Agreement." (Emphasis added.) PFRD's attempt to classify the provision as limited to an action to enforce the option agreement is not supported by the plain language of the contract.

The trial court found that "resolving what PFRD acquired in exchange for its funding [AFC's] obligation to pay the U.S. government is the linchpin to adjudicating" PFRD's claims. As the court explained, it was "PFRD's claim that it acquired the unconditional right to receive all proceeds from the liquidation" of AFC's interests in the housing projects that "is the underlying foundation and consideration for the subsequent 50/50 oral agreement that is the basis of PFRD's claim for damages." We agree. In order to establish the validity of the 50/50 agreement, PFRD contended that it had acquired the right to all proceeds from the housing projects and then gave half of those rights back as consideration for the 50/50 agreement. The court had to construe the option agreement to evaluate what rights to the housing projects PFRD acquired and whether that evidence, in

14

turn, could support PFRD's claims under the 50/50 agreement. Indeed, in evaluating PFRD's claims at trial, the court assessed PFRD's contention that it had performed under the option agreement and exercised its option to acquire all rights to the housing projects. (See *Mountain Air, supra*, 3 Cal.5th at pp. 760-761 [courts may "consider the pleaded theories of recovery, the theories asserted and the evidence produced at trial, . . . in order to identify the legal basis of the prevailing party's recovery" in assessing applicability of fee provision].) Thus, PFRD brought its lawsuit to enforce the 50/50 agreement and, necessarily, to construe the rights and provisions under the option agreement. These claims therefore triggered the attorney fee provision of the option agreement.

We reject PFRD's assertion that the option agreement was raised only in connection with AFC's affirmative defenses. As AFC points out, it did not "inject" the issue of the option agreement into the case. PFRD's claims were premised on its exercise of rights under the option agreement. While AFC asserted the option agreement was inconsistent with PFRD's allegations, the court would have had to construe the parties' rights under the option agreement as part of its assessment of PFRD's claims in the first instance. Thus, we find no error in the trial court's conclusion that AFC was entitled to attorney fees pursuant to the fee provision in the option agreement.[5]

---

[5] PFRD does not separately challenge the court's conclusion that the fees were recoverable under Code of Civil Procedure, section 1033.5. As such, we need not reach the argument regarding whether the fees are also recoverable under section 1717. (See *Santisas, supra*, 17 Cal.4th at p. 608.)

15

## DISPOSITION

The order granting the motion for attorney fees is affirmed. AFC is entitled to recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.

We concur:


CURREY, P.J.

ZUKIN, J.

16